### THE PENCOYD.

### THE JOHN K. GILKINSON.

#### (District Court, S. D. New York. October 22, 1907.)

COLLISION—TOWS MEETING—MUTUAL FAULTS OF TUGS.

A collision in upper New York Bay at night between a barge at the tail end of a tow of 13, having three tiers of 4 each ahead of it, being towed down the bay by the tug Pencoyd, and a mud scow in tow of the tug Gilkinson coming up on a hawser of 40 fathoms, *held* due to the faults of both tugs; that of the Pencoyd consisting in attempting to navigate so large a tow of vessels, all light, in a 40-mile wind without a helper, in consequence of which her tow sagged to the eastward, and in failing to maintain a lookout, and that of the Gilkinson in not paying due attention to her tow, and in changing her course to port too soon after passing the Pencoyd.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 10, Collision, §§ 78, 79.]

In Admiralty. Suit for collision.

James J. Macklin, for libellant.
Armstrong, Brown & Boland, for the Pencoyd.
Alexander & Ash, for the Gilkinson.

ADAMS, District Judge. Thomas Bulger, the owner of the barge George W. Carman, brought this action against the tug Pencoyd to recover the damages, said to amount to about $1,000, received by his said barge while in tow of said tug, through a collision with a mud scow in tow of the tug John K. Gilkinson, on the 16th day of January, 1906, in the upper New York Bay. The Pencoyd brought in the Gilkinson under the rule.

The Pencoyd was proceeding with a tow of 13 boats on a hawser of about 40 fathoms from Morris Canal Basin, Jersey City, to Port Reading, New Jersey. There were 3 tiers of 4 boats each with the Carman tailing on behind. She was on the port side of the tow and alone in her tier. All the boats were light. The entire length of the tow, including the tug, was about 750 feet. The Gilkinson was bringing the scow in from sea, where she had dumped her load. She had been towing from sea on a hawser of about 80 fathoms which was reduced off Fort Hamilton to about 40 fathoms. The collision occurred about 10 P. M. The night was dark but clear. The tide was flood.

The libellant charged the Pencoyd with fault: (1) in not keeping a proper lookout; (2) in not warning the Gilkinson of her position, the position of her tow and the course she was pursuing; (3) in not keeping on the right hand side of the channel; (4) in not porting and giving the Gilkinson and her tow more room to navigate, and (5) in not slowing or reducing her speed so as to prevent the collision.

The Pencoyd's petition alleged that the Gilkinson was in fault for the collision: (1) in not keeping a proper lookout; (2) in not displaying proper lights in accordance with the length of the tow; (3) in not altering her course to starboard so as to clear the tow of the Pencoyd, and (4) in not keeping her tow out of the way of the Pencoyd and her tow.

The Carman was properly lighted and there was no fault on her part. The question is whether the Pencoyd, the Gilkinson or both were responsible for the collision. Neither blew any navigating signals. The tug Ashburn was in the vicinity picking up some boats for the Pencoyd's tow, which she afterwards joined as a helper.

The account of the matter given by the master of the Pencoyd was that he started with his tow about 9:30 o'clock and proceeded, at the rate of about a mile an hour, in the channel, clearing Governor's Island about a half a mile, and saw a tow which turned out to be the Gilkinson, about a half a mile off; that the tugs cleared each other, port to port, by about 200 feet but that the Gilkinson was getting nearer to the Pencoyd's tow; that he saw there was going to be a collision when the tugs were passing, and when the Gilkinson was by the tail of the Pencoyd's tow, she pulled up into the wind; that he blew an alarm signal; that he did not think there was going to be

a collision until "she had passed the tow"; that he did not anticipate there was a chance of collision when she passed the tug on account of having the scow on such a long hawser; that he thought the collision occurred about half a mile off Governor's Island; that he tried to clear the scow after he saw it by porting and starboarding his wheel; that his tow was right straight in line; that he knew the tow was hit but not that a boat had broken adrift and went right on and about half an hour after the collision ascertained from the master of the Ashburn that it had happened; that the wind was not blowing as much as 20 miles an hour; that just after shaving a tow going north, he saw the red light of the Gilkinson in a position which would enable the vessels to pass safely; that when the tugs reached a position abreast of each other, he noticed she had nothing alongside but in a few minutes saw the light of the scow which was coming on a hawser, 120 or 130 fathoms in length, and she passed his tug about 70 feet off, and in a few minutes the collision happened.

The account given by the master of the Pencoyd was not consistent or satisfactory and he is the only one on her who knew anything about the matter until the collision was about to happen, when the so called lookout came out on deck from the kitchen.

It clearly appears that the Pencoyd was in fault for proceeding in such a high wind—stated by the Government Weather Observer to have been 40 miles an hour between 9 and 10 o'clock and 47 miles between 10 and 11 o'clock—without a helper to assist in keeping the tow straight. It is quite evident that the tow was sagging over towards the Governor's Island side of the channel and navigating to a certain extent in the dark for the want of an efficient lookout. The master's attention was engaged by the tug Elder and tow, going up the channel on his starboard side and tailing across. It was only when such tow was out of the way, that he paid attention to the Gilkinson and tow. When he attempted to haul out of their way it was too late and the collision happened by the scow striking the libellant's boat, with such force as to detach it from the Pencoyd's tow. The scow then made the boat fast astern and it was towed to Jersey City.

The Gilkinson went to sea in the morning from New York and having dumped her scow she started to return. During the day she had been using the intermediate hawser, which was 85 fathoms in length. On the return, just above Fort Hamilton, she reduced the length to about 40 fathoms. Proceeding thence, she met the Pencoyd, showing her red light and her towing lights in about the middle of the channel. The master of the Gilkinson said that the Elder's tow interfered somewhat with the Pencoyd and as soon as the former had passed with her tow, the latter changed her heading to the starboard and whipped the tail of his tow over towards the Gilkinson, whereupon the latter hauled towards Governor's Island to clear the tow until there remained only about 250 or 300 feet of water for him to navigate in. I am not persuaded that the effect of the Pencoyd's porting, if it took place, would be to throw her tow materially to the eastward. Doubtless there would be such an appearance if the tug changed her course much to the starboard, but I think it would be only an appearance, not really a substantial change from the course

of the tug.   No such change of course was sufficiently proven, however, to warrant a finding to the claimed effect.   I think the courses of the tows estimated by some to have been 400 feet apart, were actually much nearer, too near indeed to permit of any experiments on the part of either tug, and when the Gilkinson negligently assumed that the tows were clear and attempted to head to the westward, she unconsciously drew her tow against that of the Pencoyd.   She was not paying much attention to her tow, in fact did not know it was in collision until she went to it, just above the anchorage buoy on the Jersey flats, for the purpose of taking it alongside when the master discovered that the barge was also in tow.   The absence of care with respect to her tow was negligence on the Gilkinson's part for which she should be held.

I find that the Pencoyd was in fault for navigating without a helper under the circumstances and for want of a lookout when the master's attention was not given to the Gilkinson and tow.   I also hold the Gilkinson for not paying attention to her tow and for changing to the westward too soon.   The other faults charged need not be considered.

There will be a decree for the libellant against both tugs, with an order of reference.