## THAMES TOWBOAT CO. v. PENNSYLVANIA R. CO.

(District Court, S. D. New York. November 9, 1907.)

COLLISION—TUGS WITH TOWS MEETING—FAILURE TO CONTROL TOW.

A collision between the hawser tows of two meeting tugs, in the Kills opposite Elizabethport, N. J., *held* due solely to the fault of the tug, which was proceeding eastward with the flood tide, having a tow of 19 barges about 1,000 feet in length, because of her failure to keep her tow on the

157 F.—20

starboard side of the channel by means of a helper or otherwise. A claimed general custom for the tow navigating against the tide to stop and yield the channel to one going with the tide *held* not sustained by the evidence, nor applicable to the facts, inasmuch as the tug claimed it did not insist upon it by signals, but initiated a passing agreement.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 10, Collision, § 71.]

In Admiralty. Suit for collision.

Carpenter, Park & Symmers, for libellant.
Robinson, Biddle & Ward, for respondent.

ADAMS, District Judge. This was a cause of collision which occurred between the scow Busy, the tail boat of a hawser tow of the Pennsylvania Railroad Company's tug No. 32 and the barge Ray, the port boat in the hawser tow of the tug Aries, about 7:30 a. m., November 17, 1906, in the Kills opposite Elizabethport, New Jersey. The No. 32 had a tow of 19 barges, bound from South Amboy to New York, made up in 6 tiers of 3 loaded boats each and a light scow tailed on to the port boat of the sixth tier. The length of the tow was about 1,000 feet, of which the hawser constituted 250 to 300 feet. The Aries was bound from the East to Port Reading with 4 light barges in tow in one tier on two hawsers of about 40 fathoms in length. The width of the Aries' tow was about 120 feet. The tide was flood, running to the northward and eastward.

The libellant charges the No. 32 with faults as follows:

"(1) In that said steamtug 'No. 32' while proceeding with a fair tide was unable to keep her tow in line on account of the absence of a helper.

(2) In that said steamtug 'No. 32' did not keep her tow upon the right-hand side of the middle of the channel as she was bound to do.

(3) In that said steamtug 'No. 32' permitted her tow to sag across the channel thereby coming in contact with the barge 'Ray,' * * *."

The respondent charges the Aries with faults as follows:

"1. In not answering the first signal of one whistle from the tug 'No. 32.'

2. In not stopping and waiting for the 'No. 32' and her tow to pass, it being customary at that point for vessels with light tows on the flood tide to wait for vessels with loaded tows to pass by.

3. In proceeding and attempting to pass between the steamship and the 'No. 32's' loaded tow when those on the 'Aries' must have seen that there was danger of collision."

The channel at the point in question is from 450 to 500 feet wide. On the north side there is a wharf about 900 feet long, extending along the channel. There is a bend in the river at the point so that the channel which previously ran about north-east, took a direction there of about east. The long wharf was occupied by two or three vessels. One of them, a steamer of about 60 feet in width, was in a position to receive the strength of the current on her side. When the Aries was approaching a place in the channel opposite the steamer, the No. 32, then approaching the bend, blew the Aries a signal of one whistle. The pilot of the Aries did not hear the signal and the No. 32 repeated it. The last signal was heard and answered with a similar whistle by the Aries. The No. 32, however, was unable to keep her tow on the starboard side of the channel, and noticing danger of collision when the vessels were near together, the No. 32 blew

an alarm signal. The pilot of the Aries had also noticed the danger by this time and had stopped her engine. The collision, however, occurred by the Busy striking the Ray a blow of some severity, causing the damage, said to have amounted to about $1,300.

The defence of the respondent is that the Aries should not have attempted to pass the No. 32's tow at this narrow place, as its swinging to the north side of the channel required the Aries to stop and hold her tow before reaching the danger point, by making fast to the piers or some stakes in the vicinity or by means of her propeller, while the No. 32 and tow passed. Considerable testimony was given on behalf of the contention respecting a custom to such effect and while it appeared that the railroad tows generally gave the tow going with the tide the right of way, yet a general custom binding upon all navigators was not established. It was the duty of the No. 32 to keep her tow on the starboard side of the channel by the use of a helper if it could not be done otherwise and such duty could not be avoided by testimony to the effect that it was not customary to resort to a helper because other tows, the towers of which might desire the same favor, usually kept out of the way of the tow going with the tide, in order that the latter might occupy the whole channel, if necessary, to enable it to navigate with a single tug. Moreover, the conduct of the navigator of the No. 32 was not consistent with such navigation. He at first blew a single blast of his whistle to the Aries, which indicated a passing to the right. Doubtless at that time, the Aries was in a position to stop and await the passing of the No. 32 but the signal was not heard, whereupon, after a short interval, the No. 32 blew another signal of the same kind. The second signal was answered with a single blast and the Aries kept on until she was opposite the steamer lying at the wharf, when the No. 32, seeing that a collision would probably take place, blew an alarm signal. It was then too late for the Aries to keep out of the way of the last boat in No. 32's tow and the collision took place. Probably the principal damage was caused by the fact that the Busy ran 4 or 5 feet outside of the line of the tow through being made fast with too much line. The tow was not properly made up in this respect and what otherwise would probably have resulted in a collision without serious damage— the boats coming together with their sides and slipping by—made a serious contact through the bows striking. The master of the No. 32 should have known of the danger and not invited the Aries to attempt a method of passing of which the No. 32 could not perform her part by keeping her tow on the starboard side of the channel.

The fault of the Aries in not hearing and answering the first signal of the No. 32 was obviously not contributory to the collision and may be disregarded.

Decree for the libellant, with an order of reference.