### THE MADISON.

### THE PATCHOGUE.

(Circuit Court of Appeals, Second Circuit. April 10, 1918.)

#### No. 211.

1. COLLISION ⚖=63—LIABILITY—DIVISION OF DAMAGES.
    Where barge in tow of one tug was injured in collision with the tow of a second tug, *held*, that the first tug was at fault in allowing her tow, which was at least 500 feet long, to swing out of line in a narrow part of the river, and in failing to observe the second tug, while second tug was in fault because of failure of the lookout to notify the master of presence of first tug and tow.

2. COLLISION ⚖=57—LOOKOUT—DUTY OF.
    A lookout's duty is to report as soon as he sees any vessel with which there is danger of collision, or which in any way may affect the navigation of his own, and he cannot speculate on the probabilities of collision; such responsibility being for the master.

3. COLLISION ⚖=65—BURDEN OF PROOF—FAILURE OF LOOKOUT TO REPORT.
    While the failure of lookout to report vessel with which there might be a collision, on the assumption that the two would avoid one another, is not a violation of any statutory rule, the vessel whose lookout failed to report has the burden of showing that his failure did not contribute to the collision.

Appeal from the District Court of the United States for the Southern District of New York.

Libel by Daniel Allard against the steam tug Madison, her engines, etc., claimed by the Delaware, Lackawanna & Western Railroad Com-

pany, which impleaded the steam tug Patchogue, her engines, etc., claimed by the Long Island Railroad Company. There was a decree against the Patchogue, and the Long Island Railroad Company, claimant, appeals. Modified, so as to hold both tugs liable.

The libel was on behalf of the owner of the scow William I. Higgins for a collision occurring on March 3, 1916, at 8 p. m., on the New York side of the East River just off Pier 26 above Brooklyn Bridge. The libel was filed against the steam tug Madison, which was towing the Higgins, with four other scows in three tiers; the Higgins being a single boat in the third tier on the starboard side. The Madison brought in the steam tug Patchogue under the fifty-ninth rule. The District Judge found the Patchogue alone at fault and held her in damages.

The Madison was coming up the East River on a flood tide on a clear, dark night. She passed under the Brooklyn Bridge at about the center, having starboarded slightly to let a vessel pass down on her starboard hand. Thereafter porting, she headed over to the Brooklyn side; her tow being swept over towards the New York side by the strong set of the flood against the New York piers at that point—a well-known current to navigators at that point and upon that stage of the tide. The Patchogue had gone in to pick up two carfloats at the Long Island freight terminal below Pier 25 on the Manhattan side of the East River. Having made them fast on her port hand, she backed out: the flood carrying her stern upstream and the whole flotilla along with it. After clearing the end of the freight terminal, she went ahead under a starboard wheel, to swing around and go upstream on the tide to her destination at Long Island City. Meanwhile the tow of the Madison was swinging closer inshore, and as the Patchogue had rounded to, until heading nearly across the river, it became apparent that a 'collision was inevitable. The Patchogue backed full speed astern, and continued so backing until her after lookout advised her that she was in danger of colliding with a float which lay on the south side of Pier 26. In her maneuver, the Patchogue was herself drifting upstream, across the end of Pier 25 and nearly to pier 26, as already stated. When she stopped backing, the port corner of the inside float on the Patchogue's port hand came in contact with the Higgins and did the damage in question.

Burlingham, Veeder, Masten & Fearey, of New York City (Chauncey I. Clark, of New York City, of counsel), for appellant.

A. J. McMahon, of New York City (Ellis V. Leavenworth, of New York City, of counsel), for appellee Railroad Co.

Park & Mattison, of New York City (Henry E. Mattison, of New York City, of counsel), for appellee Allard.

Before ROGERS and HOUGH, Circuit Judges, and LEARNED HAND, District Judge.

LEARNED HAND, District Judge (after stating the facts as above). [1-3] The Madison seems to us clearly at fault. She did not see the Patchogue, and therefore made no effort to avoid her, allowing her tow, which was at least 500 feet long, to swing out of line probably 200 or 300 feet in a narrow part of the river, not over 1,400 feet wide. This management of her tow has been several times condemned in the District Court. The Pencoyd, 157 Fed. 134, Thames Towboat Co. v. Penn. R. Co., 157 Fed. 305. We think it clearly improper navigation. While it is true that the East River is not a narrow channel (The Wrestler, 232 Fed. 448, 146 C. C. A. 442), the obligation to keep tows in line was recognized by this court in the case just cited. If the tugs have not sufficient power to do this alone, they must employ help-

ers, as many do. The Madison was therefore at fault for not observing the Patchogue and giving her room to pass, or indeed room even to back out of her way.

We think, however, that the Patchogue is also at fault, because of the failure of her lookout, Miller. This man was stationed on the rear end of one of the floats at the time when the Patchogue began to back out, at which time he did not see the Madison coming up the river. For this, however, we do not charge him. As the Patchogue backed out and her stern swung upstream, Miller ran forward over the cars on the float and took his position at the forward end. At that time he saw the Madison about under the bridge, and, supposing that her tow would keep clear, he did not report her. The Patchogue's master himself was necessarily looking aft, observing the piers, of which he must keep clear, especially Pier 26, at which another float was made fast. It is not certain at just what time he made out the Madison, but meanwhile the lookout undertook to form his own opinion as to whether or not his boat would "beat out" the Madison. In this we think he was clearly wrong. A lookout's duty is to report as soon as he sees, not only any vessel with which there is danger of collision, but any which may in any way affect the navigation of his own. He may not himself engage in speculation about the probabilities of collision, or the relative movements of the two. That responsibility rests upon the master alone.

We cannot, of course, say that, if he had in fact reported as soon as he reached the forward end of his float, the result would have been different; but we think the burden is upon the Patchogue to show that his failure did not contribute to the collision. The Anna W., 201 Fed. 58, 119 C. C. A. 396; The Pilot Boy, 115 Fed. 873, 53 C. C. A. 329 (semble); The Albert Dumois, 177 U. S. 240, 254, 20 Sup. Ct. 595, 44 L. Ed. 751. It is true that this failure of the lookout was not a violation of any statutory rule; but we do not distinguish between the burden imposed upon a vessel which violates so stringent a requirement, although it depends only upon customary law, and that concededly imposed by the violation of a statutory rule.

The decree will be modified, so as to hold both vessels in fault, with costs in this court.