## THE BRANDON. THE FLORENCE OLSEN. ADAMS et al. v. HUTTON.

(Circuit Court of Appeals, Fourth Circuit. April 2, 1921.)

No. 1860.

1. **Collision** ⊖102—**Both vessels held at fault.**

Where vessels B. and O. collided when passing at night near nets laid in wartime for interception of submarines, both *held* at fault; the B., outward bound, being on the wrong side of the channel and undertaking to pass on the starboard side of the O., coming in, without making sure that the O.'s two-blast signal was for the B., and not for a patrol boat stationed at the nets, and the O. being negligent, in that the lookout thereon had left his post, and its pilot and master failed to observe the B.'s course and signals with care, which would have disclosed that the B. and a pilot boat preceding the O. had passed starboard to starboard, and that the B.'s course indicated her understanding the O. had signaled a like passage.

⊖For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**2. Collision ☞76—Immediate stopping required, where signals not under-stood.**

When proper observation would show to the master or pilot of a vessel in proximity to another that his signals have been misunder-stood, he should immediately stop and reverse, until he ascertains that his signals are understood and assented to.

Appeal from the District Court of the United States for the Eastern District of Virginia, at Norfolk; Edmund Waddill, Jr., Judge.

Libel by Charles F. Adams and others, trustees, etc., doing business under the name of the New England Fuel & Transportation Company, owner of the American steamship Brandon, against the steamship Florence Olsen, William E. Hutton, master and claimant, in which William E. Hutton filed a cross-libel. From a decree in favor of the Olsen, libelants appeal. Modified.

Edward E. Blodgett, of Boston, Mass. (Blodgett, Jones, Burnham & Bingham, of Boston, Mass., Floyd Hughes and Hughes, Vandeventer & Eggleston, all of Norfolk, Va., and Albert T. Gould, of Boston, Mass., on the brief), for appellants.

Leon T. Seawell, of Norfolk, Va. (Hughes, Little & Seawell, of Norfolk, Va., on the brief), for appellee.

Before KNAPP and WOODS, Circuit Judges, and ROSE, District Judge.

WOODS, Circuit Judge. On the night of September 22, 1918, the steamships Brandon and Florence Olsen collided off Old Point Comfort. A libel was filed by the owners of the Brandon and a cross-libel by the master of the Olsen. On depositions and testimony taken before the court, the District Court held the Brandon solely at fault, and rendered a decree in favor of the Olsen.

The Brandon, loaded with coal, was outward bound. The Olsen, light, was inward bound. Both vessels were properly lighted. The Olsen was navigated by a Virginia pilot. The master of the Brandon had a pilot's license and was navigating his own vessel. The collision was near the nets laid by the government for interception of submarines. A patrol boat, the Dempsey, was stationed at these nets to speak and identify both inward and outward bound vessels. Coming in were the Relief, a pilot boat, and behind her the steamer Olsen. The Brandon and the Olsen sighted each other when about a mile and a half apart, and each thereafter had full opportunity to observe the lights, and thus ascertain the location and course, of the other, and to take all precautions against collision.

[1] In our view, the officers of both vessels convict themselves of plain violation of the rules of navigation, and if the rules had been observed on either vessel the collision would not have occurred. The Brandon was on the wrong side of the channel, and this fault was all the greater, when it should have been obvious to her master that there were three vessels on that side, two of them incoming vessels with the right of way. Indeed, the master seems to have been confused

as to his proper position and course. His excuse for taking the wrong course was that he mistook the pilot boat Relief for a tug and tow of the N. Y., P. & N. Railroad, and his contention is that safe navigation required him to take the course he did in order to allow the supposed tug and tow to take the course usually taken by such craft. Assuming all that he says to be true, he had no excuse for not knowing that the Relief was not a tug and tow, for the presence of tug and tow would have been plainly indicated to him by lights on the barges or other craft in tow. Contrary to the rule, the master of the Brandon undertook to pass the Olsen starboard to starboard, relying on a two-blast signal from the Olsen, to which he answered assent, as a signal intended for him. In this he was negligent, for he saw the patrol boat Dempsey, and he should have expected the Olsen and the Dempsey to exchange signals, indicating the side on which the Dempsey would cross the bow and come alongside the Olsen. He therefore was clearly at fault in undertaking the unusual starboard passage with the Olsen without making sure that the Olsen's signal was for the Brandon and not the Dempsey.

No less obvious was the fault of the Olsen. The pilot saw the lights of the approaching Brandon a mile and a half away. After that first sight of the lights, neither the pilot nor any one else on the Olsen paid the least attention to the Brandon or her signals. The evidence leaves no doubt that the Olsen was moving at the rate of at least three or four knots an hour; the Brandon was moving toward her at a still greater speed. The Olsen's lookout had left his post and was doing some other work. Her master and pilot had their attention diverted at the same time by conversation with officers of the patrol boat Dempsey, which had come up on her starboard. Neither of them observed the movements or regarded the signals of the Brandon until almost at the very moment of collision. The excuse for all this negligence is that the Olsen had the right to expect the Brandon to pass port to port. The excuse is not good.

There were four vessels navigating near each other at night. The Olsen had signaled, either proposing or assenting to the Dempsey's approaching her starboard to starboard. Her pilot and master should have known that the master of the Brandon might take the starboard signal as intended for him, and should have observed the Brandon's course and signals with the utmost care. Had they observed at all, or if the lookout had been at his post, it would have been seen in ample time to prevent the collision that the Brandon and the Relief had passed starboard to starboard, and that the Brandon was taking a course indicating that her master had understood the Olsen to signal a like passage.

[2] When proper observation would show to the master or pilot of a vessel in proximity to another that his signals have been misunderstood, he should immediately stop and reverse until he ascertains that his signals are understood and assented to. The absence of a lookout, uncompensated for by watchfulness of the pilot or master, was inexcusable, and clearly a proximate cause of the collision. We have stated the rule and cited some of the authorities in Standard Oil Co. v. Davies, Master, 272 Fed. 67, decided February 14, 1921. While the

facts of that case are somewhat similar, on the vital points against the Olsen they are different.

We think the Brandon and the Florence Olsen both clearly at fault for the collision, and a decree will be entered accordingly.

Modified.