### THE WAR POINTER.
### THE STORTIND.

(Circuit Court of Appeals, Fourth Circuit. November 1, 1921.)

No. 1886.

**1. Collision ⬁50—Vessel whose position was in rear of convoy held overtaking vessel.**

A vessel, which had started in the rear of a large convoy, and which at the time of the collision had come nearly, if not quite, abeam of a vessel ahead, was an overtaking vessel, bound to observe the course of the other, and to keep away from it, and her lookout was under the duty to keep the other vessel under vigilant observation for every appearance of unsafe approach.

**2. Collision ⬁77—Lookout of an overtaking vessel held at fault for failing to keep close observation.**

The lookout of an overtaking vessel in a large convoy, which was proceeding at night without lights, *held* at fault for failing to keep under close observation another vessel of the convoy, which was being overtaken, so that no warning of the close approach of the vessels was given in time to avoid the collision.

**3. Collision ⬁54—Both vessels held at fault in attempt to pass in convoy.**

Where a large number of vessels were traveling at night, without lights, in a convoy in which each had been assigned its place and given the same course and speed, it was a fault for a vessel in the rear to attempt to pass a vessel ahead, except for cogent and special reasons, and the vessel ahead *held* at fault for deviation of her course from that fixed for the convoy.

Appeal from the District Court of the United States for the Eastern District of Virginia, at Norfolk; Edmund Waddill, Jr., Judge.

Libel in admiralty by R. Erichsen, as master of the Norwegian steamer Stortind, against the British steamship War Pointer with cross-libel by Arthur W. Melling, as master and claimant of the British steamer War Pointer, against the Stortind. From a decree against the War Pointer for all the damages resulting from the collision (264 Fed. 1013), the master and claimant of that vessel appeals. Decree modified, to charge both vessels equally with the loss.

Leon T. Seawell, of Norfolk, Va. (Hughes, Little & Seawell, of Norfolk, Va., on the brief), for appellant.

---

⬁For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Edward R. Baird, Jr., of Norfolk, Va., and Warner C. Payne, of New York City (Duncan & Mount, of New York City, and Baird, White & Lanning, of Norfolk, Va., on the brief), for appellee.

Before KNAPP and WOODS, Circuit Judges, and WATKINS, District Judge.

WOODS, Circuit Judge. On July 5, 1918, a convoy of about 30 ships sailed in a formation of nine columns from Cape Henry for European ports. The steamer Stortind, 300 feet long, 40 feet beam, net register 2,667 tons, was the last ship in the seventh column. The steamer War Pointer, 413 feet long, 52 feet beam, net register 3,201 tons, was the last ship in the fifth column. About 12:05 midnight on July 6th, about 50 miles out, the two vessels collided. Upon evidence taken entirely by deposition in the libel of the Stortind and cross-libel of the War Pointer, the District Court held the latter vessel solely responsible and charged her with the entire loss.

The master of the War Pointer testified that at midnight the Stortind was sailing on apparently parallel course about four points on his starboard bow; that without signal the Stortind suddenly changed her course to port and came upon the War Pointer so rapidly that stopping her engines and changing her helm were ineffectual to prevent collision. Every other officer of the War Pointer sworn testified to this sudden and reckless change of course by the Stortind, some of them saying she was only 250 to 300 feet from the War Pointer at the time.

The master and every officer of the Stortind who was a witness testified that the War Pointer, overtaking the Stortind on an apparently parallel course, at 12 o'clock, was about abeam on the Stortind's port side, about 100 fathoms distant; that the War Pointer in that position suddenly changed her course and ran into the Stortind, despite every effort of the Stortind to get out of the way. Thus the officers of each vessel account for the collision by attributing to the other vessel a sudden, reckless and useless change of course, when the disastrous result ought to have been apparent. If the testimony of the officers of one ship had no more corroboration than that of the officers of the other, it would be hardly possible for two lines of evidence to result in more complete cancellation. Acceptance of one in preference to the other without corroboration would be basing a judicial decree on little more than conjecture that the testimony of the officers of one ship, attributing to the officers of the other recklessness and stupidity, is more probable than like testimony on the other side. Difficult as is the explanation of the collision, we must try to find it in the testimony of disinterested witnesses and the admissions of the officers of both vessels.

[1] Capt. Hart, master of the steamer Potomac, one of the vessels of the convoy, testified that the War Pointer was astern of all the ships and that he thought she was acting as a stern cruiser. This testimony is in a degree confirmed by the evidence of the master of the War Pointer that he was acting as second vice commodore of the convoy. On this testimony we find that the War Pointer, having start-

ed behind the other ships of the convoy, must have been at the time of the collision an overtaking vessel, nearly, if not quite, abeam of the Stortind. As an overtaking vessel she was bound to observe the course of the Stortind and keep away from it. To this end her lookout was under the duty to keep the Stortind under vigilant observation for every appearance of unsafe approach. This duty was the more imperative, because the vessels in the convoy were sailing without lights and necessarily near each other.

[2] The lookout on the War Pointer testified that just before the collision he thought the Stortind was only two of her lengths distant, and he asked the lookout relieving him if she was not getting rather close. Yet neither lookout made any report, or made any effort to warn the officer in charge, or did anything to prevent the collision. Possibly it was then too late to avert it; but the burden was on the War Pointer to show that this neglect of the lookouts did not contribute to the accident. The Patchogue, 250 Fed. 850, 163 C. C. A. 164; The Transfer, 243 Fed. 174, 156 C. C. A. 40. This court has applied the rule in The Brandon (C. C. A.) 273 Fed. 176, filed April 2, 1921.

[3] Another fault of the War Pointer was in attempting to pass the Stortind. To prevent collision, the place of each vessel and the course and speed of all were fixed by order. While the orders as to these matters could not be carried out with absolute accuracy, a vessel placed behind all others should not have attempted to pass any other, except for cogent and special reasons; and no reason appears. On the testimony of the master of the Potomac and that of its own lookout, the War Pointer must be held at fault.

Did any fault as to the course of either vessel contribute to the collision? It is hardly credible that either vessel suddenly changed her course towards the other in the face of the obvious danger of collision. The night was calm, but dark, and the vessels, though visible, were without lights. Accustomed to navigation at night by observation of lights on other vessels rather than of the vessels themselves, the officers of each ship were doubtless somewhat in doubt, if not confused, as to the distance and course of the other. The reasonable conclusion deduced from the evidence is that by error in the navigation of one of the vessels they got on converging courses a short time before the accident, and got too near each other before the officers of either realized the proximity. The important inquiry is: What vessel was responsible for the change to a converging course? The testimony of the officers of the War Pointer was that the course prescribed for the convoy and sailed by their ship was east by south. The disinterested witness Tamlin, third officer of the British Baron, another vessel of the convoy, testified specifically from his log that the course ordered was east one-quarter south. The memorandum produced by Hart, master of the Potomac, showed the course actually made by his vessel was east standard. This testimony clearly shows that Erichsen, master of the Stortind, erred in making the surprising statement that no course was ordered, except to steer after the leading vessel. He testified that he was actually steering east by north, standard compass.

The evidence recited is convincing that the course actually ordered was a little south of east. Doubtless it was necessary for each ship to vary slightly the course from time to time in following the ship ahead or keeping out of the way of other ships. But we can find no reason for the Stortind sailing east by north, instead of the prescribed course east by south, or east one-quarter south. There is no dispute that there was a ship about a quarter of a mile ahead with a stern light. The evidence does not warrant the conclusion that this was the leading cruiser, which was probably much farther ahead. On the contrary, the evidence of the officers of both vessels was to the effect that the stern light was that of a steamer in the convoy. The position of the vessel and all the circumstances support the uncontradicted testimony of the third officer of the War Pointer that it was an oil steamer, which had been in the sixth column between the War Pointer and the Stortind, and had passed beyond them.

According to the testimony of the master of the Stortind, when he came out of the chart room two or three minutes before the collision, he saw this stern light one point on the starboard bow. Since the tank steamer was between the Stortind and War Pointer, and on port side of the Stortind, the light would have been on the port bow, unless the Stortind had changed her course at some time before the collision. If the light had been on the leading cruiser, whose station was near the center in advance of the convoy and on the port side of the Stortind, the appearance of the light on the starboard bow of the Stortind would be no less strong evidence that she had changed her course to port. The photographs of the vessels taken after the collision tend strongly to support the conclusion that the Stortind ran into the War Pointer. The conclusion follows that the Stortind was guilty of altering her course toward the War Pointer without notice, while the War Pointer was in sight on a parallel course, and that the change was one of the immediate causes of the accident.

The facts do not sustain criticism of the navigation of either vessel after the emergency arose. The case is one of unusual difficulty, and we can only announce the conclusions which seem to us required by the weight of the evidence. We find both vessels were at fault, and the decree will be modified, to charge them equally with the resulting loss.

Modified.