## THE PANTHER.

### THE J. W. BRANNING.

### No. 41.

Circuit Court of Appeals, Second Circuit.
Nov. 12, 1935.

Lynch & Hagen, of New York City (Charles W. Hagen and Henry C. Eidenbach, both of New York City, of counsel), for appellant.

Purdy & Purdy, of New York City (Edmund F. Lamb, of New York City, of counsel), for appellee.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

On December 9, 1933, the steam tug Panther, belonging to the libelant, was proceeding west in Kill Van Kull, bound for the west side of Pier 6, Elizabethport, to take on coal. At the same time the tug J. W. Branning, with the loaded oil barge Hardy in tow on her starboard side, was proceeding east in the Kill with the tide and bound for Stamford, Conn. The tide was running about two miles per hour. When the Branning was off the iron dock on her port side of the channel, she saw the Panther ahead just above Buoy S 8, and the Panther blew her a one-blast signal, to which the Branning replied with one blast. The Panther blew this signal when on the starboard side of the 600-foot strip of navigable water in which the channel lay and about headed for the buoy (or west). This was testified to by the master of a Pennsylvania tug which, with her tow, was then going up the channel about 100 feet to the starboard of the Branning, and was confirmed by the master of the Panther. While the mate of the Branning said that the Panther was on her port side of the channel, yet he testified that she was heading west. Thus the Panther and the Branning were approaching head and head, or nearly so, and would properly pass port to port.

The Panther, in accordance with her one-blast signal, proceeded to starboard in order to make a landing at Pier 6. The Branning, which was going up about 100 feet from the New Jersey piers and about 100 feet to the port of the Pennsylvania tow, made no attempt to go to starboard even after she saw the Panther's turn toward Pier 6, but kept right on, and only reversed when too late to prevent a collision.

The captain of the Branning had died before the trial, but the mate, who was the man at the wheel, testified that, aft-

er he heard the one-blast signal from the Panther, he knew that she was hauling in toward the coal dock at Pier 6 and also knew that she would have to slow down and could not go in at full speed. Her movements were therefore not only ascertainable but actually known from the outset. Commonwealth & Dominion Line v. United States (C. C. A.) 20 F.(2d) 729.

■ The trial judge held that the Panther was at fault because she was a crossing vessel and did not keep her speed, but, after giving her signal, first slowed down and then started up to make her landing. We think that there are two answers to the position taken by the court below. The first is that the vessels were in all probability approaching head and head, or nearly so, and the Branning, after accepting a signal which meant that she should go to starboard, failed to take that course. There were 100 feet between her barge and the Pennsylvania tow, so that she could have nosed in toward that tow considerably or, at all events, could have held back when she was aware that the Panther was crossing to Pier 6. The second answer is that, if the trial court was right in holding that the vessels were on crossing courses, the Branning should have held back or passed to the stern of the privileged vessel. We think that it cannot be said that the Panther did not keep her course and speed in the sense that the law requires. Where a privileged vessel was within 500 feet of her dock and was on the point of making a landing, she was entitled to proceed in the way usual in such cases and to have reasonable latitude in slowing down and moving forward to make her pier. Surely keeping course and speed in such circumstances must mean the course and speed which are reasonably customary in preparing to dock. Commonwealth & Dominion Line v. United States (C. C. A.) 20 F.(2d) 729.

■ It is probable that the District Court thought that the starboard hand rule applied because the Panther when first sighted was at a point in the channel where it slightly curved and where the headings of the two vessels, if projected, would cross. But the courses on which they were proceeding did not cross. In such circumstances, they were approaching head and head irrespective of how their bows might from time to time be pointing. The Victory & The Plymothian, 168 U. S. 410, 418, 18 S. Ct. 149, 42 L. Ed. 519; The Arrow (C. C. A.) 214 F. 743.

■ But, whichever rule applied, the Branning was flagrantly at fault for doing nothing to keep out of the Panther's way when she admittedly knew the destination of the latter and could readily have avoided her. As it was, the Branning would have prevented a collision if she had gone 20 or 30 feet further to starboard, and there was enough space so that she might readily have moved even further than that. She might have held back somewhat besides. She did neither, and thus became solely responsible for the damage done to the libelant's tug.

Accordingly, the interlocutory decree is modified so as to award full damages to the libelant against the Branning.