## THE D. S. NO. 24.

## THE BRONX NO. 4.

### No. 16603.

District Court, E. D. New York.

Aug. 25, 1943.

Ignatz Wilkenson, Corp. Counsel, of New York City (Herbert E. Lee, Asst. Corp. Counsel, of New York City, of counsel), for libellant.

Foley & Martin, of New York City (Christopher E. Heckman, of New York City, of counsel), for David J. Conroy, Inc., claimant of the Bronx No. 4.

Alexander & Ash, of New York City (Joseph Meehan, of New York City, of counsel), for respondent Shamrock Towing Co., Inc.

Hagen & Eidenbach, of New York City (Charles Hagen, of New York City, of counsel), for respondent-impleaded, Erie R. Co.

CAMPBELL, District Judge.

This suit is brought to recover damages alleged to have been received as a result of a collision.

Early in the morning of November 29, 1941, the claimant's Tug "Bronx No. 4" left the Dump at 59th Street, North River, with the steel Scow "D. S. No. 24", loaded with refuse, in tow, bow first on the tug's starboard side, bound down the river and to Rikers Island. The tug and the scow were displaying the lights required by the regulations.

The red and green running lights were displayed on the top of the pilot-house of the "Bronx No. 4".

The libellant's Scow "D. S. No. 24" was loaded so highly with refuse as to prevent the Master of the "Bronx No. 4" from seeing over, or through it, at most points on the starboard bow and side, but he could see ahead and astern. The "D. S. No. 24" was made fast to the "Bronx No. 4" with towing line, backing line and stern line, and the "D. S. No. 24" was without motive power. When the tug with her tow started down the river there was a lookout from the tug, and the Captain of the scow on the bow of the scow, but the Captain of the scow went on her stern to haul the lines astern. The "Bronx No. 4" with her tow proceeded down the river, with her lookout on the bow of the "D. S. No. 24".

The night was dark, with visibility good, tide ebb slack, and wind negligible.

On conflicting evidence I find that the "Bronx No. 4" and her tow were proceeding down the river on the New York side, and not in the centre of the river.

On the same early morning of November 29, 1941, the respondent-impleaded's tug Nanuet after backing her out, at the Erie Terminal at Jersey City, took in tow the Erie loaded car float No. 3824 on the tug's port side, and from a point abreast of the Lackawanna float bridges on the New Jersey side, took her departure with her tow across the river, bound for the south side of Pier 48, North River, the destination of the float. A lookout from the Nanuet was stationed on top of the cars while going

across the river, and both tug and tow were displaying the lights required by the regulations.

The vessels proceeded, and the lookout of the "Bronx No. 4" says that he saw the green light of the Nanuet, but did not report it, as he thought the vessels would pass starboard to starboard. In this, he is in error, as the green light of the Nanuet, in my opinion, could not have been seen after she picked up her tow and headed across the river, and from then on her red light would have been visible to the lookout, if he had looked carefully.

When the Nanuet reached about mid river, her lookout reported the "Bronx No. 4", and the Master of the Nanuet then saw momentarily the green light of the "Bronx No. 4". Thereafter the green light of the "Bronx No. 4" disappeared, indicating to the Master of the Nanuet a change of course to port by the tug "Bronx No. 4", which would eliminate the possibility of collision. What in fact probably happened was that the green light of the "Bronx No. 4" was blocked out by the height of the load of refuse on the "D. S. No. 24", which was being towed on the starboard side of the "Bronx No. 4".

It was only when the vessels were very close, and when the Nanuet was crossing ahead of the "Bronx No. 4" and her tow at a distance of about 100 to 150 feet, that the lookout on the "Bronx No. 4" shouted to her Captain to go back. That he attempted to do, but it was too late.

No reason existed for the failure of the lookout of the "Bronx No. 4" to observe the red light on the Nanuet, before he says he did, and if he did see that light, he should have reported it to the Captain at once. He was not a licensed man. His failure to do so was a grievous fault, and a cause of the collision. The Madison, 2 Cir., 250 F. 850.

The failure of the Captain of the "Bronx No. 4" to observe the red light of the Nanuet is easily explained, as his view off the starboard bow and side was obstructed by the high load of refuse on the "D. S. No. 24", and he observed it when it appeared through an opening in the top of the load of refuse.

The Master of the Nanuet saw, and her deckhand, who was acting as lookout, reported the green light of the "Bronx No. 4" when she was about off Pier 49 or 50.

Whether the "Bronx No. 4" did swing toward the New York shore and close off her green light, or whether the refuse was loaded on the "D. S. No. 24", obscured the green light on the "Bronx No. 4", the result is the same, and the liability of the "Bronx No. 4" remains the same.

There is a sharp conflict as to the place of the collision, but I am convinced that it was near the New York shore, as the Nanuet had slowed down her engine preparatory to making her landing, and after the collision of the port bow corner of the "D. S. No. 24" with the port side of the car float in tow of the Nanuet aft of amidships, inflicting damage on the "D. S. No. 24", the car float in tow of the Nanuet, as a result of the collision, nearly came into contact head on with Pier 46.

This was clearly a crossing situation, and the starboard hand rule applied. The "Bronx No. 4", having the Nanuet off her starboard bow, was the burdened vessel, and should have stopped and backed, or passed under the stern of the Nanuet.

The Nanuet was the privileged vessel, and was bound to hold her course and speed.

It was not a fault on the part of the Nanuet to stop her engine and check her speed preparatory to landing. The Panther (The J. W. Branning), 2 Cir., 79 F.2d 625.

No signals on the part of the Nanuet were required, and she was not at fault for failing to give any. The Boston Socony, 2 Cir., 63 F.2d 246.

The libellant and the scow "D. S. No. 24", and those for whose actions they were responsible, were without fault or blame.

The respondent, Shamrock Towing Co., Inc., has clearly shown that the collision was caused by the negligence of the Tug "Bronx No. 4", and those for whose action she is responsible, and therefore the Shamrock Towing Co. Inc., is not liable under its contract with the libellant.

The respondent-impleaded, Erie Railroad Company, and its tug Nanuet, and those for whose actions they are responsible, are without fault or blame.

The respondent Tug "Bronx No. 4" was solely and wholly at fault and to blame.

A decree should be entered in favor of the libellant against the Tug "Bronx No. 4" with costs and the usual order of refer-

ence, and in favor of the respondent Shamrock Towing Co., Inc., dismissing the libel as to it, without costs, and in favor of the respondent-impleaded, Erie Railroad Company, dismissing the libel and petition as to it, with costs, against the claimant of the Tug "Bronx No. 4", the petitioner.