### RICE v. UNITED STATES.

### THE GRACE R.

### THE MARTIN KEHOE.

No. 256, Docket 20968.

Circuit Court of Appeals, Second Circuit.
May 25, 1948.

Purdy, Lamb & Catoggio, of New York City (Edmund F. Lamb and Thomas J. Irving, both of New York City, of counsel), for appellant.

J. Vincent Keogh, U. S. Atty., of New York City, (Leo J. Curren, of New York City, of counsel), for respondent-appellee.

Mahar & Mason, of New York City (Frank C. Mason and Anthony J. Randolph, both of New York City, of counsel), for libellant-appellee.

Before L. HAND, SWAN, and CLARK, Circuit Judges.

SWAN, Circuit Judge.

This litigation resulted from a collision between the libellant's scow in tow of the Army tug ST 56 owned by the United States, and a flat barge in tow of the tug Martin Kehoe. The collision occurred a short distance off the end of Pier 16, Staten Island, about 1 A.M., January 10, 1945. The trial judge held both tugs at fault and divided between them the libellant's damages. Upon this appeal each tug owner claims that the other should be held solely responsible.[1]

The district judge wrote an opinion[2] and made detailed findings of fact which may be summarized as follows: The Army tug picked up the scow at Pier 19 and was to shift her to the bulkhead at Pier 13, which is to the north. The scow was made fast on the tug's port side and extended beyond the stem of the tug. The cargo laden on the scow blocked out the tug's navigation lights from the port side, except for one white staff light, and entirely obstructed the vision to port of the tug's navigator. There were no lights on the scow. The Army tug navigated on a wide arc from Pier 19 which took her about 1,000 feet off shore. She was on this course and below Pier 16 when first sighted by the Martin Kehoe. This tug had picked up a loaded flat barge on the north side of Pier 16. The barge was made fast on the Kehoe's starboard side; the stem of the tug extended about twelve feet beyond the bow of the barge and the navigator of the tug had unobstructed vision ahead and to both sides. As the Kehoe cleared the barges lying at the end of Pier 16, her captain saw a single white light approaching from the south, which

proved to be a staff light on the Army tug ST 56. The Kehoe which was heading into the ebb tide, stopped her engines and blew a single blast to indicate she would go under the other vessel's stern. Without responding the Army tug continued on her projected course toward Pier 13, but the exceptionally strong ebb tide caused the tug and scow to be carried down stream. When the Kehoe saw that the Army tug was not making good her projected course, the Kehoe reversed her engines, sounded danger signals, and backed down as close to the barges lying at the end of Pier 16 as she safely could. The port side of the scow amidships hit the starboard forward corner of the barge.

■ If we accept the trial court's findings of fact the faults of the Army tug are too clear for debate. Both the make-up of her tow and her navigation were inexcusable. She had the scow alongside without lights on it, and so arranged as to obscure her own red light and her navigator's vision to port. She allowed her tow to drift down in the ebb tide until she drove the Kehoe's barge almost upon the vessels at the end of Pier 16. Instead of regarding the court's findings as clearly erroneous, we think them clearly correct. Therefore the liability of the United States as owner of the Army tug needs no further discussion.

■ The only fault found against the Kehoe was that she had no lookout. We have held that this is like a statutory fault and imposes upon the guilty vessel the burden of showing beyond a reasonable doubt that the fault could not have contributed to the collision. The Madison, 2 Cir., 250 F. 850, 852; Martin Marine Transp. Co. v. Jakobson & Peterson, 2 Cir., 135 F.2d 325, 328; Gulf Oil Corp. v. The Socony No. 16, 2 Cir., 162 F.2d 869, 870. In the present case we think that burden was discharged. The Kehoe's captain saw the white light of the Army tug as soon as the Kehoe cleared the barges on the end of Pier 16. Since the pilot house is only 12 feet back from the stem of the tug, a lookout posted on the Kehoe's deck could

---

[1] The owner of the tug Martin Kehoe is the only appellant; but the United States as respondent-appellee has filed cross assignments of error.

[2] The Grace R, D.C., E.D.N.Y., 66 F. Supp. 376.

have seen the approaching white light sooner than did the captain by only a matter of seconds. If the master had had notice of the approach of the Army tug a few seconds earlier, this would not have affected his navigation. It would not have enabled him to proceed ahead of the Army tug, for to cross her bow would have been a fault. The only effect it could have had in aiding him to pass under her stern was to enable him to start backing sooner; but that effect we know it would not have had since after the captain saw the approaching light he did not immediately start backing. It is well settled that the absence of a lookout is not material, where the presence of one would not have availed to prevent the collision. The Blue Jacket, 144 U.S. 371, 389, 12 S.Ct. 711, 36 L.Ed. 469; The Livingstone, 2 Cir., 113 F. 879, 883; Puratich v. United States, 9 Cir., 126 F.2d 914, 916; Lind v. United States, 2 Cir., 156 F.2d 231, 233. That was the situation in the case at bar.

■ Counsel for the United States also urges that the Kehoe did not blow a proper slip whistle, since her captain admitted on cross-examination that he had stopped the whistle before he cleared the barges lying at the end of Pier 16. See The Supply No. 4, 2 Cir., 109 F.2d 101, 103. The trial judge found that a slip whistle was blown and made no finding that it was an inadequate whistle. Even if a fault had been found in this respect we do not see how it could have contributed to the collision. The Army tug had warning enough of the presence of the Kehoe; the collision occurred because she permitted the tide to sweep her scow down upon the forward corner of the Kehoe's tow although the Kehoe had backed away as far as she safely could without danger of colliding with the boats on the end of Pier 16. Under these circumstances the major-minor fault rule should be applied in favor of the Kehoe's slip whistle. The Victory & The Plymothian, 168 U.S. 410, 423, 18 S. Ct. 149, 42 L.Ed. 519; Harbor Oil Transport Co. v. The Plattsburgh Socony, 2 Cir., 151 F.2d 708, 710.

The decree is modified to hold the United States solely liable for the libellant's damages.