**IRA S. BUSHEY & SONS, Inc. v. UNITED STATES.**

No. 130, Docket 21174.

United States Court of Appeals Second Circuit.

Feb. 11, 1949.

Foley & Martin, of New York City (Christopher E. Heckman, of New York City, of counsel), for plaintiff-appellee.

Burlingham, Veeder, Clark & Hupper, of New York City (Eugene Underwood and B. E. Haller, both of New York City, of counsel), for defendant-appellant.

Before L. HAND, Chief Judge, and SWAN and CHASE, Circuit Judges.

CHASE, Circuit Judge.

This appeal was taken by the government from a judgment in a suit against the United States brought under the provisions of the Tort Claims Act. 28 U.S.C.A. § 931 [now § 1346]. The plaintiff-appellee is the owner of what is known as Bushey Pier No. 7 on the northwesterly side of Gowanus Creek. The outer end of this pier was struck and damaged by the tanker A. C. Dodge, which for the purposes of this case is to be treated as owned and operated by the plaintiff, lwhile the vessel was being maneuvered to an intended landing at the pier end. It was alleged that the Dodge struck the pier when it was vainly attempting to break a port sheer it took when its starboard bow was hit by the wash from the propeller of the government's ship, the S. S. El Mundo, which was undergoing a dock trial while moored at a pier on the easterly side of the Creek across from the Bushey pier. The court found that such wash did cause the accident; that it was negligently allowed to interfere with the navigation of the Dodge; and that the Dodge was not negligent. D.C., 78 F.Supp. 673.

The Dodge, a coastwise oil-tanker 213.7 feet long with a draft of 14 feet and 805 horse power, entered Gowanus Creek early in the afternoon on June 13, 1945, intending to moor at the Bushey Pier No. 7 to take on supplies. Her captain was in the wheel house with the mate who was steering. The tide was on the ebb running at about one

half a knot and had no effect upon navigation. There was a light rain but visibility was good. When nearly off the slip between Bushey's Pier No. 7 and Pier No. 8, the Dodge stopped her engines to allow a tug with a carfloat which was blocking her way to enter the slip beside Sullivan's Pier A to the South. She then started at slow speed to make her mooring. As she moved opposite the slip between piers 7 and 8 she was struck by the wash from the El Mundo's propeller and took the sheer to port which carried her a little into the slip. In the slip there was a pile driver on which men were working and which was endangered by the Dodge's sheer. To break the sheer, the Dodge's engines were put full speed ahead on a hard right rudder, but the distance to Pier 7 was too short to enable the Dodge to clear the outer end of it and, though just before the collision her engines were reversed, she could not be held back enough and the collision occurred.

The El Mundo was a steamship 405 feet long with 5500 horsepower. She had a single propeller with four blades having a pitch of 24.75 feet and a diameter of 19 feet. She was moored bow in at Sullivan's Pier A which lay across the Creek about 250 feet from Bushey's Pier 7 with her stern about 70 feet inside the slip. As the Dodge came up, the El Mundo's propeller was turning at 35 revolutions per minute while a dock test of her main shaft bearings was being made and it was not stopped as the Dodge approached. Since the top of the propeller extended about two feet above the water, the surface water was made turbulent and the wash was visible as it went out into the Creek. There was testimony from the plaintiff's side that this wash flowed so far above the surface of the water that when the Dodge was moored at Pier 8 after the accident it overflowed her free board of about eight inches and spilled onto her deck, and there was no evidence that it had increased in the short time since the accident.

The El Mundo had a boatswain stationed on the bridge to report the approach of traffic in the Creek but the Dodge had no lookout, though there was a sailor on her deck on the port side in the wellhead below the raised forecastle who was waiting to put a line out to Pier No. 7 when she got there. The trial judge found that the Dodge was not guilty of contributory negligence, however, because he was of the opinion that she was under no duty to maintain a lookout for wash from the propeller of a ship being given a dock test.

We shall accept the findings that the El Mundo was negligent and that its wash caused the sheer of the Dodge. But we cannot agree that the Dodge was free from negligence. On the contrary it was her duty to maintain a vigilant lookout to see and report whatever was visible which would affect her navigation as she maneuvered to moor. That this wash was visible is clear and that if the navigator of the Dodge had been aware of it he could have avoided the accident is equally clear. The necessity to maintain a lookout and the duty to be alert to the discovery and disclosure, as quickly and as completely as the circumstances permit, of everything which the navigator of a vessel needs to know in the performance of his duty has for so long been so well known that we need not labor the point. The Manhasset, D.C., 34 F. 408; The Tillicum, D.C., 217 F. 976; New York & Oriental S. S. Co. v. New York, N. H. & H. R. Co., D.C., 143 F. 991. Indeed the failure to do so is a fault so serious that in admiralty a guilty vessel can escape from its ordinary consequences only by proving, as in respect to a statutory fault, that it did not and could not have contributed to cause what happened. Rice v. United States, 2 Cir., 168 F.2d 219; The Madison, 2 Cir., 250 F. 850; The Ariadne, 13 Wall. 475, 20 L.Ed. 542.

Regardless of the negligence of the El Mundo, that of the Dodge is fatal to any recovery in this action. Her negligence is attributable to the plaintiff. Contrary to the rule which obtains in admiralty, there is no division of damages in a suit such as this under the Tort Claims Act. The government is liable as a private person would be and is entitled to make the same defenses. The law of New York is controlling and under that law a plaintiff must affirmatively prove freedom from contributory negligence as a condition precedent to any recovery. Compare Palmer v. Hoffman, 318 U.S. 109, 63 S.Ct. 477, 87 L.Ed. 645, 144 A.L.R. 719, with Central

Vermont R. Co. v. White, 238 U.S. 507, 35 S.Ct. 865, 59 L.Ed. 1433, Ann.Cas.1916B, 252; Brugher v. Buchtenkirch, 167 N.Y. 153, 60 N.E. 420; Mastin v. City of New York, 201 N.Y. 81, 94 N.E. 611, 33 L.R.A., N.S., 784; Storr v. New York Central R. R. Co., 261 N.Y. 348, 185 N.E. 407; Monacelli v. State of New York, 295 N.Y. 332, 67 N.E.2d 569.

Judgment reversed and complaint dismissed.