**John B. BINDLOSS, Libelant,**
v.
**THE BLUE FIN.**

No. 1776.

United States District Court
D. Rhode Island.

Dec. 13, 1955.

Swan, Keeney & Smith (Marshall Swan), Providence, R. I., Bingham, Dana & Gould, Boston, Mass. (Chas. S. Bolster, and Robert J. Hallisey, Boston, Mass., of counsel), for plaintiff.

Charles H. Drummey, Providence, Arthur Sullivan, Joseph J. Nicholson, Newport, R. I., for defendant.

DAY, District Judge.

This suit was brought by the libelant as owner of the fishing vessel William Chesebrough (hereinafter referred to as "the Chesebrough") to recover damages alleged to have resulted from a collision between that vessel and the fishing vessel Blue Fin (hereinafter referred to as "the Blue Fin"). The collision occurred in the vicinity of 4 o'clock A. M. on May 19, 1954 in the channel which extends from Galilee to Point Judith Harbour of Refuge in the District of Rhode Island. Claim to the Blue Fin was filed by her co-owners who answered the libel and filed a cross-libel to recover for damages to the Blue Fin.

In this case as in many cases in admiralty there was an irreconcilable conflict in the testimony as to the occurrences immediately prior to the collision. However, as to certain material facts there appears to be no room for dispute.

The channel in which the collision occurred extends from north to south and is approximately 150 feet wide. West of the channel there is a breakwater extending southerly the approximate length of the channel. At the southerly tip of this breakwater there are a light and siren.

Shortly before 4 o'clock A. M. on the morning of May 19, 1954, the Chesebrough left Galilee and proceeded down the channel in a southerly direction with the intention, according to her captain, of proceeding to Block Island Sound which is located to the southwest of the breakwater. She was manned by her captain and one deck-hand who at the times involved here was below deck and did not see the Blue Fin at any time before the collision and did not observe the collision.

While the Chesebrough was proceeding down the channel the Blue Fin entered the channel at its southeasterly end from the Harbour of Refuge with Galilee as her destination. She was manned by a captain and two deck-hands. The captain was in her pilot-house located about fifty feet aft of her bow and close to her stern. Between the pilot-house and bow there were the mast and rigging which to some extent at least would serve to obstruct his view from the pilot-house.

The weather was clear. It was dark at the time of the collision which, I believe, occurred at a point on the westerly side of the channel between 40 and 60 feet east of the breakwater. Just prior to the disaster the speed of each vessel was approximately three knots per hour.

Captain Hoxie of the Chesebrough testified that his vessel was proceeding down the channel on her starboard side, that while so proceeding he saw the Blue Fin enter the channel from the southeast, gradually moving over toward the light at the tip of the breakwater. He further testified he next saw the Blue Fin "headed up" the channel, that he saw her masthead and green lights, and that she was bearing straight ahead. He claimed that he did not at any time see the red light of the Blue Fin. After seeing the Blue Fin proceeding straight ahead he proceeded a little way further and then put his flashlight beam on the bow of the Blue Fin. According to his direct testimony, perhaps a minute after putting the flashlight beam on the Blue Fin, he saw a collision was imminent and began reversing and the collision occurred just as the Chesebrough began to move astern.

Under cross-examination he admitted that his view of the Blue Fin was unobstructed from the time he first saw her, that the only signal he gave to the Blue Fin prior to the collision was made by the beam of his flashlight which he played on

the bow of the Blue Fin and that she was coming up the channel on his right. He also admitted that the Blue Fin was between 400 and 600 feet away when he employed the flashlight beam, that at that time the Blue Fin was bearing on a straight course directly toward his vessel and did not change her course. He also stated that when he saw the course of the Blue Fin, he moved to starboard to get closer to the breakwater and that when he could not go nearer to the breakwater with safety he reversed his engine. Under cross-examination he also stated he had no idea of how far distant the Chesebrough was from the Blue Fin when he reversed his engine. He also disclaimed making any contention that the Blue Fin changed her course just before the disaster.

Captain Fahlen of the Blue Fin testified that he first observed the masthead light of the Chesebrough shortly after entering the channel, that she was proceeding down the channel on her port side, that in view of this fact he changed the course of the Blue Fin to her left but failed to give any signals and proceeded up the channel on her port side intending to make a starboard to starboard passing. He also testified that he saw only the masthead light of the Chesebrough, and that just before the collision she swung sharply to her starboard across the bow of the Blue Fin and that she struck the Chesebrough at approximately a right angle. He also claimed that when he saw the collision was imminent he threw out his clutch but did not attempt to reverse his engine.

One of the deck-hands on the Blue Fin who was allegedly acting as the lookout gave substantially the same version. He admitted he did not report any change of course by the Chesebrough to anyone, claiming it occurred too suddenly for him to be able to do so. He, too, saw only the masthead light of the Blue Fin.

The other deck-hand testified similarly and further that if the Chesebrough had not altered her course there would have been at least a distance of twenty feet between the vessels for their passing.

After a consideration of all of the exhibits, the testimony and the reasonable inferences therefrom, the conclusion is inescapable that the collision would not have occurred without fault on the part of each vessel.

■ It is clear that the Blue Fin was at fault in certain respects. The channel was narrow. It was her duty to keep to her starboard side thereof. Art. 25, 33 U.S.C.A. § 210. This she failed to do. In addition, if she intended to pass the Chesebrough starboard to starboard, it was her duty to indicate by appropriate signals her intention to do so and to await and assent to such passing. The Bilbster (The Stavangaren), 2 Cir., 6 F.2d 954; The John King, 2 Cir., 49 F. 469; Johnson v. Nakat Packing Corp., D.C. Ala., 85 F.Supp. 230. This she also failed to do.

The failure of the captain and crew of the Blue Fin to see the green and red lights of the Chesebrough convinces me that they were not maintaining a proper lookout for approaching vessels. It may well be that the view of the captain was obscured by reason of the location of the pilot house and the presence of the mast and rigging in front of it. But the failure of the deck-hand to see these lights indicates he was a lookout in name only and derelict in the performance of his duties.

■ On the other hand, I am satisfied that the Chesebrough was also guilty of fault which contributed to the disaster. While it is true that she had no lookout in addition to her captain, I do not believe the absence of such a lookout is material in this instance. It must be borne in mind that the pilot house of the Chesebrough was located about 10 feet aft of her stem and that her captain had an unobstructed view from its window. It is unlikely that a lookout, if posted, would have been able to observe or tell anything to the captain which he did not know. Since the presence of a lookout

would not have availed to prevent the collision, his absence is immaterial. The Blue Jacket, 144 U.S. 371, 381, 12 S.Ct. 711, 36 L.Ed. 469; The Livingstone, 2 Cir., 113 F. 879; Rice v. United States, 2 Cir., 168 F.2d 219; The Trim, D.C. Mass., 30 F.Supp. 283.

Apart from this element, I am satisfied that the Chesebrough was guilty of faults which contributed to the collision. I do not believe that she was at all times on her starboard side of the channel preceding the disaster. The captain's failure to observe the port light of the Blue Fin when, as he says, she was proceeding on a straight course ahead on her port side of the channel is significant in my mind. He failed to see it because his vessel, until just before the collision, did not keep to that side of the mid-channel which lay on her starboard side. The Chesebrough reached the point of collision by her captain's pulling her sharply to starboard as he insists. He does not claim that the Blue Fin altered her course which he said was straight ahead more than a minute before the disaster. Undoubtedly this sudden change of course by the Chesebrough contributed to the collision.

█ The captain of the Chesebrough concedes that his view of the Blue Fin was unobstructed at all times following her entrance into the channel. If he was attentive to his responsibilities and was observing her with due precaution, as he claims, it must have occurred to him that if she continued to follow her course a collision would occur. He makes no claim that the Blue Fin changed her course after heading up the channel. His action in flashing his light beam on her bow indicates his doubt as to her intention and his awareness of the existing danger. It was then his duty to give the warning signal required by Rule III of Title 33 U.S.C.A. § 203. This he failed to do. In my opinion this also contributed to the collision.

█ In conclusion I find that both vessels were guilty of faults, that the negligence of each contributed to the disaster and that the damages should be divided equally between them, such damages to be determined by me after hearing upon due notice to the parties.