## THE WRESTLER.

## THE WYOMISSING.

(Circuit Court of Appeals, Second Circuit. March 14, 1916.)

### No. 185.

1. COLLISION ⊕⟳90—RULES FOR "NARROW CHANNELS"—EAST RIVER.

The East River is not a "narrow channel," within article 25 of the Inland Rules (Act June 7, 1897, c. 4, § 1, 30 Stat. 101 [Comp. St. 1913, § 7899]), and the only regulation as to navigation between the Battery and Blackwells Island is Laws N. Y. 1882, c. 410, § 757, which requires vessels going up or down to keep as near as possible in the center of the channel.

[Ed. Note.—For other cases, see Collision, Cent. Dig. §§ 181–186, 196; Dec. Dig. ⊕⟳90.

For other definitions, see Words and Phrases, Second Series, Narrow Channel.]

2. COLLISION ⊕⟳95(2)—TOWS MEETING—NAVIGATING WITH LONG TOWS.

A tug with a tow of 18 loaded canal boats extending 650 feet beyond her stern, passing up East River on a flood tide near the Brooklyn shore, *held* solely in fault for a collision between one of two tugs coming down with a car float nearer the shore and one of the tail-end boats of her tow, which she permitted to swing around toward the meeting tugs.

[Ed. Note.—For other cases, see Collision, Cent. Dig. §§ 200–202; Dec. Dig. ⊕⟳95(2).]

3. COLLISION ⊕⟳95(1)—TIDEWATERS—NAVIGATING WITH LONG TOWS.

Tugs which have long tows in tidewaters must see to it that they control their tows sufficiently to prevent them from doing harm to other vessels.

[Ed. Note.—For other cases, see Collision, Cent. Dig. §§ 200–202; Dec. Dig. ⊕⟳95(1).]

⊕⟳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Appeal from the District Court of the United States for the Southern District of New York.

Suit in admiralty for collision by William H. Follette, owner of the canal boat Videtto, against the tug Wrestler, the River & Harbor Transportation Company, claimant, with the tug Wyomissing, the Philadelphia & Reading Railroad Company, claimant, impleaded. Decree against the Wrestler, and her claimant appeals. Reversed.

Burlingham, Montgomery & Beecher, of New York City (Charles C. Burlingham and Chauncey I. Clark, both of New York City, of counsel), for appellant.

James J. Macklin, of New York City (Frank V. Barns, of New York City, of counsel), for appellee Follette.

Armstrong, Brown & Purdy, of New York City (Pierre M. Brown, of New York City, of counsel), for appellee Philadelphia & R. R. Co.

Before COXE, WARD, and ROGERS, Circuit Judges.

WARD, Circuit Judge. January 18, 1913, about 5 p. m., the tug Wyomissing was going up the East River with a hawser tow of four tiers, having four loaded canal boats in each tier, and two tailing on behind the middle boats of the last tier. The hawsers were 150 feet long, the boats about 100 feet long, and the tiers were 5 or 6 feet apart, so that the tow extended say 650 feet from the stern of the tug. The tide was flood and the wind southwest.

The East River runs from Brooklyn Bridge to Corlears Hook about east and west, and the flood tide sets over from the Brooklyn Bridge to the New York shore to a point above the Manhattan Bridge, and then runs along the New York shore to Corlears Hook. The effect of this is that there is an eddy tide from the Brooklyn Bridge for a considerable distance along the Brooklyn shore. The southwest wind blows quartering across the stream to New York.

The tug Montauk, with a car float on her starboard side and the tug Wrestler on the starboard side of the float, came down the East River and crossed from Corlears Hook to the Brooklyn side. The two tows were meeting starboard to starboard on the Brooklyn side of the river, which is there about 1,200 feet wide. As they were passing under the Manhattan Bridge the Wyomissing starboarded and the tail of her tow swung over toward the Brooklyn shore, whereupon the Montauk went in toward Brooklyn, and afterwards the Wrestler reversed full speed astern, with the view of throwing the stern of the car float away from the tail of the Wyomissing's tow; but the Videtto, which was the starboard of the two boats tailing on to the tow, came into collision at her starboard quarter with the starboard quarter of the Wrestler, sustaining considerable damage.

The owner of the Videtto filed a libel against the Wrestler, and the claimant of the Wrestler brought in the Wyomissing under the fifty-ninth rule (29 Sup. Ct. xlvi). The answer of the claimant of the Wyomissing to the petition stated:

"While the Wyomissing and her tow were in the middle of the river, and when shortly above the Brooklyn Bridge, the tugs Montauk and Wrestler, with a car float between said tugs, were coming down the East River on the

Brooklyn side. The Wrestler was on the starboard side of the car float. It was not possible for the Wyomissing to pass the said oncoming tow port to port as the latter was too near the Brooklyn shore, but there was abundant room to pass starboard to starboard, had the tugs Wrestler and Montauk either gone closer to the Brooklyn shore or stopped or slowed down for a few moments. The Wyomissing starboarded her wheel in order to give more room to the said tugs and car float, but, being incumbered with the tow as she was, she did not quite succeed in pulling the tail end of the tow clear of the Wrestler, with the result that the starboard quarter of the Videtto struck the starboard quarter of the tug Wrestler, injuring the boat Videtto."

The District Judge found the Wrestler solely at fault, saying that she was coming down on the wrong side of the river, that the witnesses of the Wyomissing impressed him favorably, and that he was convinced their recollection of the circumstances was correct.

[1, 2] The East River is not a narrow channel within article 25 of the Inland Rules, and the only regulation as to navigation between the Battery and Blackwells Island is section 757, c. 410, Laws of 1882, of New York, which requires vessels to go up and down as near as possible in the center of the stream. Both these tows were on the Brooklyn side of the center of the stream, the Montauk's quite close in. All the witnesses agree that as they were meeting they were obliged to pass starboard to starboard. They were navigating where they were for obvious reasons, which each perfectly understood. The Wyomissing wanted to avoid the set of the tide between the Brooklyn and Manhattan bridges over to New York, and the Montauk and her tow wanted to avoid the force of the flood tide in coming down the East River. Therefore they were each taking advantage of the eddy tide along the Brooklyn shore. There was no misunderstanding between them as to the way they should pass as is proved by the fact that no signals were exchanged, and that no alarm was blown by either indicates that the emergency which arose was sudden. As the effect of both the wind and the tide would have been to swing the tail of the tug's tow toward New York if she was going straight up in the center of the river at this point, we think the admitted swing of her tail was caused by her own navigation. It may be that to counteract the set of the tide toward New York the tug, which is a powerful one, first ported and then when she got into the eddy tide hard astarboarded. Certainly the pilot who was in charge of her navigation admitted that the tail of his tow did swing toward Brooklyn. He said it was 100 feet nearer than the tug was and he drew a diagram showing this. The pleading of the Wyomissing also admits this and the fact that the starboard quarter of the Videtto struck the starboard quarter of the Wrestler seems to us to confirm it.

[3] Tugs which have long tows in tidewaters must see to it that they control their tows sufficiently to prevent them from doing harm to other vessels. We think the Wyomissing solely at fault.

The decree is reversed.