JAMES McWILLIAMS BLUE LINE v. NEW YORK & CUBA MAIL S. S. CO. et al.

THE YUMURI.

THE SETTER.

District Court, S. D. New York.
July 21, 1930.

Macklin, Brown, Lenahan & Speer, of New York City (by Richard F. Lenahan and Edmund F. Lamb, both of New York City), for libelant and claimant impleaded.

Burlingham, Veeder, Fearey, Clark & Hupper, of New York City (by Chauncey I. Clark and Adrian J. O'Kane, both of New York City), for the Yumuri.

GODDARD, District Judge.

This suit arose from a collision between the steamship Yumuri and the tow of the tug Setter, which occurred off Red Hook, which is on the Brooklyn side near the southerly entrance of Buttermilk Channel, on August 21, 1926, at about 9:40 a. m.

A libel was filed by the James McWilliams Blue Line as owner of the barges James A. McAllister, William S. McAllister, Blue Line, Blue Whale, and Blue Star against the steamship Yumuri. The New York & Cuba Mail Steamship Company, claimant of the Yumuri, impleaded the steamtug Setter, which was owned and operated by the James McWilliams Blue Line, libelant, at the time of the collision.

In the early morning of August 21, the tug Setter, with a hawser tow of five loaded barges, left Perth Amboy, N. J., bound east and intending to pass up the East River. The tow was made up in two tiers; three boats in the leading and two in the following tier. The barge William S. McAllister was in the second tier on the starboard side; the tow was on 150-foot hawsers, and the second tier was made fast to the first tier on a short hawser. The total length of the tow, including the tug, was some 500 feet. The Setter proceeded out through the Kills and up the Bay, and when she reached the vicinity of a point about midway between the southerly end of Governor's Island and the general anchorage ground which divides Red Hook Channel from the main channel, she changed her course to an easterly direction for the purpose of passing up through Buttermilk Channel.

The Yumuri, in ballast from Baltimore bound for Pier 10, Brooklyn, had proceeded up Red Hook Channel on a northerly course, came into collision with the tow about off Red Hook, the stem of the Yumuri coming in contact with the starboard side of the William J. McAllister, resulting in more or less serious damage to the McAllister and to some of the other barges, so it is claimed, but the Yumuri was not injured. It was the first hour of the ebb tide, and through Buttermilk Channel the tide runs particularly strong. The weather was clear with a light breeze. Full speed of the Yumuri was variously stated as being four to eight miles an hour.

The charge in the pleadings against the Yumuri is that the Yumuri, at a high rate of speed, attempted to pass between the starboard side of the tow and the Brooklyn shore, and finding herself unable to do this, without warning, changed her course to pass to the port side, and in swinging collided with the barge McAllister; also that those in charge of her were incompetent "and that she was at fault in not stopping and backing in time to avoid a collision."

The Yumuri denies these charges and alleges that while the Yumuri was stopped near the entrance to Buttermilk Channel, the Setter with her tow attempted to cross the Yumuri's bow from port to starboard, and negligently allowed the strong ebb tide to carry her tow down against the Yumuri's bow, and

that although the Yumuri put her engines full speed astern, she was unable to avoid the collision.

The testimony, some of which was taken in open trial and some by deposition, is confusing and cannot be reconciled.

The testimony of William S. Warms, the master of the Yumuri, is in contradiction to that of Linstad, the third officer of the Yumuri. Mr. Warms testified that the Yumuri had proceeded up about the middle of Red Hook Channel and when she arrived at a point a little north of Pier 40 her engines were stopped to await the tug William F. Meseck, which was coming down with docking orders and to assist her; that he then observed the Setter and her tow about four points off his port bow about half a mile away, heading east across his bow; that the Yumuri remained in this position ten minutes; and as the tow proceeded the strong tide sent it down towards the Yumuri, with the result that the tide swung the William J. McAllister against the stem of the Yumuri, although the Yumuri had a minute or a minute and a half previous to the collision started her engines astern and had backed some 200 feet. That the collision occurred off Pier 40. He also says no signals were given by either vessel. This testimony is so highly improbable, besides being inconsistent with other testimony and the engine room log, that I do not accept it as the correct version of how the collision occurred. It is improbable that the Yumuri, which was in ballast, could have remained in this position off Red Hook with her engines at rest where he says he stopped, and where the collision occurred, for ten minutes in the strong tide and while the Setter and her tow were struggling against the tide to recover this half mile. Moreover, if this was the situation, the Yumuri is not free from fault in remaining in this position without any effort to avoid the collision by backing or going ahead until the tow was close upon her and it was too late, when it was apparent to her navigator and must have been so for some minutes that the tow was being carried down upon her by the strong tide.

The testimony of Linstad, the third officer of the Yumuri, is that she had stopped in Red Hook Channel about a mile or a mile and a half from the point of collision for the purpose of receiving docking orders from the tug Meseck which was on the way down to her; that at this time he saw the tow some two miles away on the Yumuri's port bow; that the tow was proceeding in an easterly direction to cross Buttermilk Channel; that after the Yumuri had stopped for some five minutes and received orders from the Meseck, the Yumuri went ahead again at full speed up Red Hook Channel; that as the Setter with the tow were crossing the Channel the strong ebb tide sent the tow down towards the Yumuri as the Yumuri approached Buttermilk Channel; that the Setter passed to the starboard side of the Yumuri, but the barges continued to be carried toward the Yumuri by the tide, and when the Yumuri was between 100 to 200 feet or less than a ship's length away from the tow, the Yumuri's engines were stopped and then reversed; that about a minute and a half later, and after the reversal of the engines had caused her bow to swing to port, the stem of the Yumuri collided with the starboard side of the McAllister; that the collision occurred six or seven hundred feet off Pier 39 or 40. Linstad says that no whistles were blown by either the Yumuri or the Setter.

Taking into consideration all the testimony and the probabilities, my conclusion is that this is substantially the manner in which the collision occurred, and it is apparent that the Yumuri was not free from fault, first, because of her failure to establish a passing agreement or to give any signal, and, secondly, she continued on in the face of an apparent danger of a collision with the tow which was drifting down upon her, yet the Yumuri made no effort to avoid it until she was within less than a ship's length away when it was too late. In view of the tidal conditions and the approach of the apparent cumbersome and unwieldy tow were being carried towards her by the strong tide, the Yumuri should have exercised care commensurate with the danger and used more than ordinary caution to avoid a collision. The Syracuse, 9 Wall. (76 U. S.) 672, 19 L. Ed. 783; The Lucy (C. C. A.) 74 F. 572; The Westhall (D. C.) 153 F. 1010; The Maine (D. C.) 2 F.(2d) 605; The Georgetown (D. C.) 135 F. 854.

In so far as the Setter is concerned, I am convinced from the testimony that the Setter and the Yumuri were on crossing courses at the time of the collision; the Yumuri bound northerly and the Setter bound easterly for Rosin dock, Pier 38; and under the starboard hand rule (article 19 of the Inland Rules), which is a rigid one, the Yumuri was the privileged vessel; notwithstanding this, the Setter with her tow continued on without blowing any whistles until she blew the alarm just before the collision. Although it is not unlikely that at

about the time the Setter entered into the strong tide, the Yumuri was stopped further down Red Hook Channel waiting for the Meseck, but the Setter had no right to attempt to make Buttermilk Channel with an unwieldy tow which she could not handle without danger of collision if the Yumuri should proceed, or if some other vessel came along. The Wrestler (C. C. A.) 232 F. 448. The captain of the Setter admitted that he could not buck the tide and had decided to hang up at Pier 38 until the tide changed.

Therefore, it seems to me that both the Setter and the Yumuri were guilty of such serious faults producing the collision as to require a division of damages, and decrees may be entered accordingly with the usual reference to ascertain the amount of the damages.