**358**

THE WILLIAM V. O'DRISCOLL.

THE PHILADELPHIA.

THE KEVIN MORAN.

NEW YORK TRAP ROCK CORPORATION v.
DANIEL ROE TOWING & TRANS-
PORTATION CO., Inc., et al.

THE MORAN NO. 20.

THE DANIEL R. ROE.

MORAN BROS. CONTRACTING CO., Inc., v.
DANIEL ROE TOWING & TRANS-
PORTATION CO., Inc.

Nos. 11447, 12131.

District Court, E. D. New York.

March 23, 1931.

Frederick W. Park, of New York City, for libelant New York Trap Rock Corporation.

Macklin, Brown, Lenahan & Speer, of New York City, for libelant Moran Bros. Contracting Co., Inc., and claimant Moran Towing & Transportation Co., Inc.

Barry, Wainwright, Thacher & Symmers, of New York City, for claimant Daniel Roe Towing & Transportation Co., Inc.

BYERS, District Judge.

On May 8, 1929, at about 3:00 A. M., the scow O'Driscoll, being in tow to the tug Philadelphia, was in collision with the scow Moran No. 20 off the 46th street pier (Manhattan) in the East River, giving rise to the admiralty causes herein discussed.

The Philadelphia tow contained five light barges, in tandem, there being two in the second tier, and alongside the Philadelphia, to her port, was the helper tug Daniel R. Roe. The Philadelphia had out two hawsers to the tow, of 120 feet, and the Roe was made fast to the Philadelphia. The tow was made up at Riker's Island, bound for the Battery, and the O'Driscoll was the fourth and last element.

The tow was headed down stream and, when about 200 feet off the 47th street pier, the O'Driscoll was struck by the Moran No. 20 in tow to the tug Kevin Moran, which had the former on her starboard side, stern first, being headed up stream, but close to the Manhattan shore.

The air was clear, with a northwest wind blowing, and the tide was ebb.

The owner of the O'Driscoll has libeled the Philadelphia, owned by the respondent Daniel Roe Towing & Transportation Co., Inc.; and Moran Bros. Contracting Co., Inc., owning the Moran No. 20, has libeled the tugs Philadelphia and Daniel R. Roe.

The Daniel Roe Towing & Transportation Co., Inc., has impleaded the Kevin Moran under the 56th Admiralty Rule (28 USCA § 723), and seeks relief under its libel against that vessel.

The causes have been tried together, and will be disposed of in one decree.

The Moran tow was made up at the Arbuckle pier, in Brooklyn, early in the morning, probably around two o'clock, and started for the bulkhead at 72nd street, Manhattan side; a course was laid for 39th street, on the Manhattan side of the East River, the intention being to proceed up stream on that side to avoid the force of the ebb tide. The New York side having been reached, the tow proceeded within 25 or 30 feet of the bulkhead, until the 45th street pier was ap-

proached, to pass which it was necessary to head toward midstream, and to continue in such a course, to clear the 46th street and 47th street piers, which are much longer than the former.

At this time, the Lehigh Valley tug Cornell was in the act of breaking around the north side of the 47th street pier, a ten-car float, about 200 feet in length, which was headed diagonally into the slip, and was about to be straightened out and headed directly inshore and made fast. At the time of or immediately prior to the collision, that float projected about 100 feet out into the stream.

The Philadelphia and her tow were about 100 feet offshore of the end of that car float as it so projected, as the first-named tow came down stream. There was a northwest wind blowing of about twenty miles, which tended to incline the tow to its own port side, although it was substantially straight in line.

The Kevin Moran had to pass up stream outside of the car float, but inside of the Philadelphia and her tow; she blew a two-whistle signal for a starboard to starboard passing, but it is impossible to state when; finding herself being forced offshore by the ebb tide which affected her port bow quarter, and the northwest wind, she was unable to hold a definite up-stream course, but veered toward midstream; she straightened away, but not in time to avoid contact between the scow which she had alongside and the last boat in the Philadelphia tow—the O'Driscoll.

The navigating officers of both the Philadelphia and the Moran tug testify that each observed the other when the latter was about at 39th street, headed up stream, and the former was above 50th street, headed down stream, and the starboard passing was the obvious maneuver to govern the situation. The Philadelphia did not alter her course, because there seemed no necessity for so doing.

 It is found that the fault lay with the Moran tug, for this reason:

As the latter approached the 46th street pier, insufficient attention was paid to the Lehigh Valley car float, and the time that would be required by it to enter entirely into the slip on the north of the 47th street pier was underestimated. The captain of the Kevin Moran first says that he did not notice the car float, which is not accepted; and then, that he paid no attention to it, because he knew it would be out of the way when he reached the pier around which it was being broken.

In that estimate, he proved to be mistaken, whereby he was forced to maintain a heading toward midstream for a longer time than he anticipated, and he could not straighten away soon enough to swing his tow clear of the Philadelphia's. The ebb tide and the northwest wind, which forced him offshore, undoubtedly played their part in rendering his navigation difficult. When he was south of the 45th street pier, he was in practically slack water, which was his reason for being on that side of the river, and, if he had stopped his way at that point until the car float was safely berthed, the collision would not have occurred.

The Kevin Moran was on the wrong side of the channel, and hence its fault is to be presumed; The H. L. Bond (D. C.) 46 F. (2d) 345; The Black Diamond (C. C. A.) 273 F. 811.

If it should be thought that the Kevin Moran was not at fault for having been on the west side of the channel under the existing conditions (The Wrestler [C. C. A.] 232 F. 448; The Madison [C. C. A.] 250 F. 850, cited by the proctors for the Moran), it is none the less clear that the Kevin Moran was at fault for failing to navigate so as to delay in rounding the 46th street and 47th street piers until the Lehigh Valley car float was entirely out of the channel. It seems clear that this could have been accomplished, had the navigator in charge of the Kevin Moran recognized the obvious requirements of the situation with which he was confronted as he made out into the channel from his position close to the shore at the bulkhead south of the 45th street pier.

The libel in the first cause is sustained against the Kevin Moran, with costs, and dismissed against the Philadelphia and the Daniel Roe Towing & Transportation Co., Inc., without costs; in the second cause, the libel against the Philadelphia and the Daniel R. Roe is dismissed with costs.

Settle decree on notice.

If the foregoing be deemed an insufficient compliance with Admiralty Rule 46½ (28 USCA § 723), findings and conclusions may be settled on notice.