GULFCOAST TRANSIT COMPANY, a
Florida corporation, Libelant,

v.

The M/V ARCTIC REEFER and her ap-
purtenances, and versus all persons law-
fully intervening for their interest
therein, and Arctic Shipping Corpora-
tion, a Liberian corporation, Respond-
ents.

GULF FLORIDA TERMINAL COMPA-
NY, a Florida corporation, Libelant
and Cross-Respondent,

v.

M/V ARCTIC REEFER and her appur-
tenances, and versus all persons law-
fully intervening for their interest
therein, and Arctic Shipping Corpora-
tion, a Liberian corporation, Respond-
ents and Cross-Libelants.

Nos. 728, 735.

United States District Court
M. D. Florida,
Tampa Division.

July 18, 1963.

Macfarlane, Ferguson, Allison & Kelly, and Knight, Bell & Jones, Tampa, Fla., for Gulfcoast Transit Co.

Allen, Dell, Frank & Trinkle, Tampa, Fla., for Gulf Florida Terminal Co.

Fowler, White, Gillen, Humkey & Trenam, Tampa, Fla., Proctors for M/V Arctic Reefer and Arctic Shipping Corp.

DE VANE, District Judge.

This action concerns a collision between the motor vessel ARCTIC REEFER and the steamship MARTHA MAC in Cut C Channel of Hillsborough Bay, Tampa, Florida, at about 3:36 P.M. on the afternoon of June 20, 1962.

Gulfcoast Transit Company, the owner of the MARTHA MAC, has filed its libel against the ARCTIC REEFER and her owner to recover damages sustained by the MARTHA MAC in said collision. Arctic Shipping Corporation, the owner of ARCTIC REEFER, has in turn filed a cross-libel against Gulfcoast Transit Company to recover damages sustained by the ARCTIC REEFER in said collision.

At the time of the collision the tugs JOHN C and AVON were alongside the port bow and starboard quarter, respectively, of the MARTHA MAC, but had not begun to assist her prior to the collision. The tug JOHN C sustained minor damages in the collision, and her owner, Gulf Florida Terminal Company, has filed a libel against the ARCTIC REEFER and her owner to recover damages sustained by the JOHN C. Both libels have been consolidated for trial. Responsibility for JOHN C's damages will be governed by the determination of liability as between the MARTHA MAC and ARCTIC REEFER.

The MARTHA MAC was proceeding inbound in Channel C at the time and the ARCTIC REEFER was outbound. The collision occurred very close to the western limits of Cut C Channel, i. e. on MARTHA MAC's left side of the channel and the ARCTIC REEFER's right side.

The collision occurred at some point between Beacon 29 and Beacon 31. The testimony is to some extent in conflict on the exact location of the collision. The record discloses that Beacon 29 is approximately 6,300 feet south of Beacon 31. The conflict in the testimony of the respective parties involved places the collision somewhere between 1,000 and 3,000 feet south of Beacon 31.

The draft of the MARTHA MAC at the time of the collision was 28 feet 5 inches forward and 28 feet 6 inches aft. The draft of the ARCTIC REEFER at the time of the collision was 9 feet 5 inches forward and 18 feet 6 inches aft. The MARTHA MAC is approximately 523 feet long and 68 feet wide. The ARCTIC REEFER is approximately 336 feet long and 45 feet wide. Cut C Channel where the collision occurred is 400 feet wide and has a depth of 34 feet. The depth of the bay outside the western edge of Cut C Channel between Beacons 29 and 31 generally ranges from 13 to 15 feet.

Tugs JOHN C and AVON came alongside the MARTHA MAC at or just below Beacon 29 in Cut C Channel. The MARTHA MAC had moved to the west side of the channel when these tugs joined her. At the time the MARTHA MAC moved to the west side of the channel and was joined by the tugs, the ARCTIC REEFER was proceeding south in Channel D. This channel enters Channel C just north of Beacon 31. The ARCTIC REEFER was close enough to Channel C at the time the tugs came alongside the MARTHA MAC for each of the ships to be visible to the other. The MARTHA MAC had already taken her position on the west side, her wrong side, of the channel when the ARCTIC REEFER entered Channel C.

Captain Dahl, who was in control of the MARTHA MAC, testified that shortly after sighting the ARCTIC REEFER in Channel D he sounded a two-blast signal which according to the rules of the road at sea was a request to make a starboard-to-starboard passage with the oncoming vessel, which under the rule could only be done by agreement. He testified that he heard no response to this request and that after the ARCTIC REEFER got well in Channel C, he again sounded two blasts asking permission for the starboard-to-starboard passage with the ARCTIC REEFER.

Captain Dahl testified that he had reduced the speed of his vessel to 2 or 3 knots an hour. The captain of the ARCTIC REEFER testified that his ship was traveling at a speed of 7 or 8 knots an hour. All of the personnel of the ARCTIC REEFER who testified in the case denied that they heard either of the two-blast signals. The captain did testify that after he got into Channel C, he heard a one-blast signal from the MARTHA MAC.

Captain Dahl testified that he himself piloted the MARTHA MAC into the Tampa Harbor on the day of the collision, that the MARTHA MAC did not employ a harbor pilot from the Tampa Bay Pilots Association and that it had been his custom for months to bring his ship into the harbor under his own navigation. On the other hand the ARCTIC REEFER had a pilot from the Tampa Bay Pilots Association in charge of her navigation at the time of the collision.

While the evidence is to some extent in conflict, there is no dispute in this record on the important question presented. The MARTHA MAC at the time of the collision was in violation of the Narrow Channel Rule—Article 25, Inland Rules of the Road, 33 U.S.C. § 210. This Rule provides that "[i]n narrow channels every steam vessel shall, when it is safe and practicable, keep to that side of the fairway or mid-channel which lies on the starboard side of such vessel."

The question thus presented for the Court's decision is whether or not this

admitted violation of Article 25 makes the MARTHA MAC guilty of such a grievous violation of the navigation rule that she cannot be exonerated from fault for causing the collision.

Starting with the citation of The Pennsylvania v. Troop, 19 Wall. 125, 86 U.S. 125, 22 L.Ed. 148, proctors for respondent cite many decisions supporting this position. On the other hand proctors for libelant cite many cases supporting exceptions to this rule and the question before this Court is whether it should follow the contention of proctors for respondent or whether the position taken by proctors for libelant is adequately supported by the cases cited by them.

The Court has reviewed many of these decisions in an effort to try to reach the proper result in this case and after so doing the Court has come to the conclusion that it should adhere to the rule announced by the Court of Appeals for the Fifth Circuit in Socony-Vacuum Oil Company v. Smith, (5th Cir.), 179 F. 2d 672. See also The Perseverance, (2nd Cir.), 63 F.2d 788; Matton Oil Transfer Corp. v. The Greene, (2nd Cir.) 129 F. 2d 618; Hedger Transp. Corp. v. Hart, (2nd Cir.) 163 F.2d 90.

The evidence in this case discloses without controversy that when the ARCTIC REEFER came into Channel C, the MARTHA MAC, which was already on the wrong side of the channel for her, was more than a mile away and the two tugs had joined her to help her enter Black Point Channel extending from Channel C to Tampa Electric Company's docks, which was her destination. The pilot in charge of the ARCTIC REEFER testified that he had piloted the MARTHA MAC into Black Point Channel on several occasions and that he never moved over to the west bank of Channel C to make the turn into Black Point Channel. However, on this record it is asking too much of us to assume that he was not aware of the fact that Captain Dahl did take the MARTHA MAC over to the west bank of the channel in order to make the turn into Black Point Channel. Moreover, as familiar as he was with the operation of this vessel in Channel C and her known destination, it took no imagination on his part to understand why Captain Dahl had the MARTHA MAC over against the west bank of the channel. There was more than 300 feet of clear channel lying east of the MARTHA MAC and nothing to interfere with the ARCTIC REEFER executing a starboard-to-starboard passage under all the circumstances of the case.

Under the facts as they existed at the time, I find and hold that the ARCTIC REEFER was at fault. Her pilot was as familiar with the MARTHA MAC as he was with the ship he was then piloting and he was aware of the fact that the MARTHA MAC was heavily loaded and was more than 100 feet longer than the width of the Cut C Channel. To give to him the wisdom to know what he should have done under the circumstances is not demanding of him wisdom beyond his capacity.

The Court finds and holds that the violation by the MARTHA MAC of Article 25 of the Inland Rules was a condition and not a contributing cause of the collision and that the Gulfcoast Transit Company is entitled to recover damages the MARTHA MAC sustained as a result of the collision.

The Gulf Florida Terminal Company is also entitled to recover from the ARCTIC REEFER and her owner, the Arctic Shipping Corporation, damages sustained by it as a result of the collision.

By stipulation of the parties only the question of liability was submitted to the Court, and after an appropriate decree is entered herein, the case will in due course be tried on the question of damages. Proctors for libelant will promptly submit to the Court an appropriate decree applicable to this phase of the litigation.