Fred YAEGER, as owner of THE fishing vessel BREEZY BILL, Libelant,

v.

THE fishing vessel ALTEN, her engines, gear, furniture and apparel, and Raymond Hall, her owner, Respondents.

Civ. No. 9696.

United States District Court
D. Oregon.

Dec. 3, 1958.

William F. White, White, Sutherland & White, Portland, Or., for libelant.

John R. Brooke, Wood, Matthiessen, Wood & Tatum, Portland, Or., for respondents.

EAST, District Judge.

In this cause the libelant seeks to recover damages resulting from a collision at sea. On August 13, 1957, at or about 0415 Pacific Standard Time (PST), the fishing vessel Alten and the fishing vessel Breezy Bill collided on the Pacific Ocean somewhere between the 31 and 34 fathom curve some seven miles west of Waldport and the mouth of the Alsea River, Oregon.

The Breezy Bill, a wooden-hulled vessel of some ten tons, cleared Newport, Ore-

gon, harbor around 0005 PST on August 13, 1957, bound for the offshore fishing areas. Aboard was her master and owner, Fred Yeager, and one Tom Hereford, crewman. The vessel was under way by power for about three hours until she reached the general area of the collision, where her power was cut and she was allowed to drift. The master ordered the colored port and starboard running lights to be turned off, and he and the crewman went below to sleep. The only light showing on the vessel was a 360° white arc light affixed to the vessel's mast some 25 feet above the water line.

The Alten, displacing some 64 tons, and also of wooden structure, had been at sea for three days and was returning to Newport Harbor, some 18 miles north of the point of collision, to discharge her cargo of fish. The Alten was commanded by her master and part owner, Raymond Hall, and carried a crew of two, one David Phillips, and one Roger Marshall. The Alten was following a 345° compass heading and had been and was running at nine knots. The two vessels proceeded in a collision course when, at approximately 0415 PST, the bow of the Alten struck the hull of the Breezy Bill on the port side at a point about nine feet aft of the bow. Substantial damage was done to the Breezy Bill, but the vessel was able, by means of a "jury" patch, to proceed to port. No appreciable damage was done to the Alten.

### Findings of Fact

In the vicinity of the point of impact, sunrise on the day in question occurred at approximately 0510 PST, some 55 minutes after the collision. The Breezy Bill was occupying a traversed sea lane, was not at anchor, had no colored running lights showing, and had no watch topside.

This Court further finds that at the time of the collision and immediately prior thereto the vessel Alten was being navigated by means of an "iron mike," i. e., an automatic navigational device that controls the ship's compass heading and speed. On watch aboard the Alten was crewman Roger Marshall, a man with only three and one-half months experience at sea. Marshall testified that for some 15 minutes he had observed the mast light on the Breezy Bill, but had mistaken the mast light for the Yaquina Lighthouse. We take judicial notice that the Yaquina Lighthouse is located some 20 nautical miles north of the vicinity of the collision between the vessels involved. It is conclusive that the Yaquina Lighthouse at the time of the collision emitted its beam in a series of two flashes, then a 20-second pause, then a repeated series of two flashes, pause, and so on.

### Law

As the collision involved herein occurred on the Pacific Ocean, the International Rules of Navigation apply. 33 U.S.C.A. § 143 et seq. The collision occurred some 55 minutes prior to sunrise and thus, under 33 U.S.C.A. § 144(b), the Breezy Bill was required to comply with the International Rules concerning port and starboard running lights, set out in 33 U.S.C.A. § 145(a). First, this Court should find if under the Rules the Breezy Bill was "under way". A vessel is "under way":

> " * * * when she is not at anchor, or made fast to the shore, or aground." 33 U.S.C.A. § 144(c) (v).

The Breezy Bill's failure to drop her anchor while at sea resulted in her being "under way" within the meaning of the above-quoted statute, and her subsequent failure to show red and green running lights, as required by 33 U.S. C.A. § 145(a), constituted a statutory violation of the International Rules of Navigation.

It is conclusive that at the time of the collision the sea was calm and there was no measurable wind. Seaman Marshall, as helmsman and watch of the Alten, was duty bound to maintain careful lookout for the safety of his ship as well as for other vessels likely to be nearby to the point of collision. This Court believes that to mistake a steady 360° white arc mast light on the Breezy Bill for the flashing light of Yaquina Lighthouse, each in the location mentioned, of

itself speaks of negligence at the watch and the helm.

Therefore, the Alten, proceeding as she was with an incompetent lookout, directly contributed to the injury suffered by the Breezy Bill, even though the Breezy Bill was herself in violation of the Rules of Navigation. Common sense clearly indicates that maintenance of a proper lookout is essential to maritime commerce, and its lack is bound to precipitate collision. Williamson v. The Carolina, D. C., 158 F.Supp. 417. This Court recognizes the rule of The Pennsylvania, 19 Wall. 125, 22 L.Ed. 148, which holds that a vessel guilty of violating a statutory rule must, in order to be free from blame, show that the violation not only probably did not, but could not, have contributed to the injury complained of. On the other hand, the courts have held that the failure to maintain a proper lookout raises a presumption of fault against the negligent vessel which can only be overcome by proof beyond a reasonable doubt that such fault did not contribute to the injury. Ira S. Bushey & Sons v. United States, 2 Cir., 172 F.2d 447; Martin Marine Transportation Co. v. Jakobson & Peterson, 2 Cir., 135 F.2d 325; The Madison, 2 Cir., 250 F. 850.

█ Faced with these two apparently conflicting rules, this Court considers the best rationale is to let these tests carry equal weight and in effect cancel each other out. This avoids a certain circuity which would be present if both tests were applied, as the trier would be faced with the establishment of a prima facie case for either party, depending upon which side of the cause the Court considered first. The Court having concluded the above tests are of equal merit, places the ordinary burden upon the Libelant, Breezy Bill, to prove her case. The evidence affirmatively indicates contributing fault on the part of both libelant and respondents. Applying the admiralty rule of divided damages, the libelant is entitled to a recovery of the sum of $2,710, a figure stipulated to by the parties as equal to one-half of the total damage resulting to the Breezy Bill.

Proctor for the libelant is requested to submit appropriate findings and judgment consistent with this opinion and in conformity with the parties' stipulation as to costs.