Norman McKEEL, Libelant,

v.

Michael F. SCHROEDER and the AMER-
ICAN OIL SCREW MANDY, her en-
gines, furniture, apparel, tackle, etc.,
and all persons claiming or to claim
said vessel, Respondents.

No. 28378.

United States District Court
N. D. California, S. D.

March 29, 1963.

Hudson, Martin, Ferrante & Street, Monterey, Cal., R. S. Cathcart, Dunne, Bledsoe, Smith, Phelps, Cathcart & Johnson, San Francisco, Cal., for libelant.

Carter Quinby, Derby, Cook, Quinby & Tweedt, San Francisco, Cal., for respondents.

ZIRPOLI, District Judge.

This is a libel in admiralty in rem and in personam commenced by Norman McKeel, the owner and operator of the fishing vessel "MA NEE", to recover for loss of his vessel occasioned by a collision between it and the fishing vessel "MANDY", owned and operated by respondent Michael F. Schroeder. Libelant alleges that the "collision, and the loss and damage resulting therefrom, was proximately caused by the *sole* fault and negligence of the MANDY'S navigators, owner and crew." In his answer, respondent admits the fault of the MANDY but denies that its violation was the sole proximate cause of the collision. On the contrary, respondent alleges "that the collision was the result of mutual faults on the part of both vessels."

These respective contentions of libelant and respondent are stated in the pre-trial order, as follows:

"7. That the issue of law to be tried is whether, under the facts and circumstances, the aforesaid collision was proximately caused by the sole fault of respondent, as contended by libelant, or whether the collision was the proximate result of fault of both parties, as contended by respondent."

Pursuant to stipulation of proctors for libelant and respondent, the damages sustained by libelant were fixed at Thirteen Thousand Seven Hundred and Sixty-Three Dollars and Sixty Cents ($13,763.60), and the damages sustained by respondent were fixed at Two Thousand Two Hundred and Thirty-Seven Dollars and Two Cents ($2,237.02).

The following are the essential facts as developed in the trial:

For several days prior to September 11, 1961, the MA NEE, manned and operated by libelant alone, had been fishing approximately fifty miles off the coast of California in the waters of the Pacific Ocean west of Monterey and Santa Cruz and had taken 228 albacore, which had been stowed and iced in the vessel's hold during the night of September 10, 1961 and the morning of September 11, 1961, when the events hereinafter related took place. There were approximately 100 fishing vessels in the vicinity, a general area about 30 miles square. During the night of September 10 the engine of the MA NEE was stopped. At approximately 6:00 a. m. libelant resumed fishing operations, in the course of which the vessel was under way with her jig poles extended from the port and starboard side about midship and the jig lines trailing in the water. At approximately 8:30 a. m. libelant stopped the vessel's engine to replace a generator belt, and during the time of such replacement, approximately 15 to 20 minutes, the starboard jig lines drifted under the vessel. After the generator belt was replaced, libelant started the vessel's engine and let it idle out of gear while he went to the stern of the vessel to pull in the jig lines in preparation for taking the vessel to shore to deliver her catch. Libelant pulled in the starboard jig lines and was in the act of pulling in the port lines when the collision occurred. The time interval between the time libelant went to the stern of his vessel to pull in the jig lines and the collision was about three minutes, during which he did not look out at all, and although the vessel was equipped with a portable horn, at no time was the same used. No lookout was maintained during the period when libelant replaced the generator belt.

At approximately 8:45 a. m. on September 11 the MANDY, proceeding at about 6 knots on automatic pilot on a northwest course with the wind on her port bow, came into collision with the MA NEE, the MANDY'S bow cutting through the MA NEE'S hull on the starboard side at a point just forward of the engine room bulkhead. There was no eye witness to the collision, but when libelant first saw the MANDY, the anchor on the port bow of the MANDY was fouled in the gear midway on the starboard side of the MA NEE and the vessels were then making an angle of about 80 degrees, a little to the port bow of the MANDY, with damage to the MANDY at a point commencing at the stem and extending along the ribbing on the port side of the bow aft about 3 feet. At the time of the collision the weather was clear, the wind was about 20 knots from the northwest, there were heavy ground swells with a 12 to 15 feet sea, and the MA NEE was drifting in a trough port broadside to the wind at about 3 knots. The MANDY, manned by respondent and his crew member, Wayne Dawson, had no person on watch or at the wheel. Shortly before the collision, respondent Schroeder had been at the wheel of his vessel, and Dawson was in the vessel's hold chipping ice in the ice bunker for transfer to an ice box. A moment or two before the collision respondent left the wheel of the MANDY unattended and went to a point on deck above the hold to assist Dawson, who was still in the hold, in transferring the ice. Both respondent and Dawson were in these respective positions and so engaged at the time of the collision. Neither libelant nor respondent (nor Dawson) saw the other vessel prior to or at the time of the collision.

As a result of the collision, the MA NEE became an unsalvable derelict within 15 minutes after the collision and in the afternoon was destroyed by the

United States Coast Guard as a menace to navigation.

From these facts the Court finds as to the MA NEE:

■ (1) That she was not at anchor and was drifting at the time of the collision at about 3 knots and hence "under way" [1];

■ (2) That she was at fault for failure to maintain a proper lookout [2];

■ That the point of impact was on her starboard side at a point just forward of the engine room bulkhead, and the angle of impact appears to have been at about 80 degrees, thereby indicating a probable position which would subject her to the "starboard hand rule" [3];

■ (4) That libelant's faults are not excused by the fact that he was alone on his vessel; and

(5) That such faults of libelant contributed to the collision.

As to the MANDY, the Court finds:

(1) That she was proceeding northwesterly on automatic pilot at about 6 knots with no course changes and with her wind on her port bow in a rough sea, which because of the ground swells partially impaired the visibility of her crew [4];

(2) That she was without proper lookout and at no time saw the MA NEE; and

(3) That the angle of impact at the time of collision with damage to her port side of the bow indicates that she may not have been in a true crossing position, but may have been in an overtaking position to the MA NEE [5];

(4) That because of her two man crew, power, position and maneuverability, the MANDY was in a better position to avoid the accident than the MA NEE [6];

(5) That the faults of the MANDY contributed greatly to the collision.

1. Section 144(c) (v) of Title 33 U.S.C.A. provides that "a vessel or seaplane on the water is 'under way' when she is not at anchor, or made fast to the shore, or aground." See Yaeger v. The Alten, D. C.Or.1958, 167 F.Supp. 617.

2. Rule 29 of the International Rules of Navigation at Sea requires that a proper lookout be kept. 33 U.S.C.A. § 147a.

3. Rule 19 of the International Rules of Navigation at Sea provides that when two power-driven vessels are crossing, so as to involve risk of collision, the vessel which has the other on her starboard side shall keep out of the way of the other. 33 U.S.C.A. § 146c.

4. "This conduct was a complete disregard of every elementary rule of navigation. To set the automatic pilot and go below while proceeding at eight knots outside the entrance to San Francisco Bay amounts to reckless seamanship and is negligence of the highest order." Hertz v. Consolidated Fisheries, 9th Cir., 1954, 213 F.2d 801, 803.

5. Section 146h of Title 33 U.S.C.A. provides:
"(a) Notwithstanding anything contained in sections 146–146k of this title, every vessel overtaking any other shall keep out of the way of the overtaken vessel.
"(b) Every vessel coming up with another vessel from any direction more than 2 points (22½ degrees) abaft her beam, i. e. in such a position, with reference to the vessel which she is overtaking, that at night she would be unable to see either of that vessel's sidelights, shall be deemed to be an overtaking vessel; and no subsequent alteration of the bearing between the two vessels shall make the overtaking vessel a crossing vessel within the meaning of sections 146–146k of this title, or relieve her of the duty of keeping clear of the overtaken vessel until she is finally past and clear.
"(c) If the overtaking vessel cannot determine with certainty whether she is forward of or abaft this direction from the other vessel, she shall assume that she is an overtaking vessel and keep out of the way."

6. Section 146k of Title 33 U.S.C.A. provides:
"In obeying and construing sections 146–146k of this title due regard shall be had to all dangers of navigation and collision, and to any special circumstances, including the limitations of the craft involved, which may render a departure from sections 146–146j of this title necessary in order to avoid immediate danger."

From the foregoing facts, the Court concludes that the negligence of the MANDY was considerably greater than that of the MA NEE; that the negligence of the MANDY contributed to the extent of three-quarters (¾) of the total fault, and the negligence of the MA NEE contributed to the extent of one-quarter (¼) of the total fault.

■■ This conclusion, which takes the instant collision out of any claimed "last clear chance" rule and out of the "major-minor fault" exception to the rule applicable in the assessing of proportional damages when both vessels are at fault, seems to leave this Court in the unhappy and unjust position of accepting what many courts regard as the American rule of equal division of damages in collision cases of mutual fault. This rule, when applied to facts similar to those found in the instant case, has caused many courts to "chafe discontentedly * * * in the belief that there is nothing they can do about it." [7] To this belief this Court need not subscribe. Fortunately, something has been done about it. The late Judge Miner recently pointed the way in N. M. Paterson & Sons, Limited v. City of Chicago, D.C.Ill.E.D. 1962, 209 F.Supp. 576, when in a detailed and well reasoned opinion he made a complete, accurate and penetrating review of the law of admiralty in mutual fault collision cases and concluded that when there is marked disparity in the degree of fault of the vessels involved in the collision, the comparative negligence doctrine applies, and recovery may be apportioned based upon the degree of fault to either party. After finding that the degrees of negligence of libelant and respondent which contributed to the collision were respectively two-thirds (⅔) and one-third (⅓), he proceeded to award damages accordingly. In so doing, he concluded at page 591:

"In view of the fact that our Supreme Court has never ordered equal division of damages in any case where the findings were specific that the respective degrees of contributing fault were unequal, this court is free in this case to apportion damages unequally, based upon the specific unequal degrees of contributing fault of which it has found each party has been guilty. It has always been the policy of the Supreme Court that a court of admiralty has the discretion, flexibility and duty to do the complete justice inherent in the historical role of the maritime court."

This faith in justice so well expressed by Judge Miner which enabled him to change the course of the stars, regardless of the astrologers, has firmly convinced this court that when presented with a proper case, the Supreme Court, after renewed acquaintance with the historical development of division of damages and pondering The Max Morris [8], will place the United States once again

---

Section 146j of Title 33 U.S.C.A. provides in part:

"All vessels not engaged in fishing shall, when under way, keep out of the way of any vessels fishing with nets or lines or trawls." The MANDY was not engaged in fishing at the time of the collision, but the MA NEE still had her lines out.

7. Staring, Damages in Admiralty, (1957) 45 Cal.L.Rev. 304, 341. See also Ahlgren v. Red Star Towing & Transportation Co. (2d Cir., 1954), 214 F.2d 618, 620–621.

8. "The rule of the equal apportionment of the loss where both parties were in fault *would seem to have been founded upon*

*the difficulty of determining, in such cases, the degree of negligence in the one and the other.* It is said * * * that such rule of division is a rustic sort of determination, and such as arbiters and amicable compromisers of disputes commonly follow, where they cannot discover the motives of the parties, or when they see faults on both sides. ·

\* \* \* \* \*

" 'Even in cases of marine torts, independent of prize, courts of admiralty are in the habit of giving or withholding damages upon enlarged principles of justice and equity, and have not circumscribed themselves within the positive boundaries (sic) of mere municiple (sic) law' * * *. 'In the admiralty, the award of damages

in step with the progress of general maritime law.[9]

■ Being in accord with Judge Miner that trial courts and courts of appeal, in collision cases are completely free to apportion damages unequally where the relative degrees of fault can be determined, this Court is firmly convinced that it is in the interest of justice to do so in the instant case. Having determined, as stipulated by counsel, that the total damages sustained by libelant and respondent in the instant collision amount to Sixteen Thousand Dollars and Sixty-Two Cents ($16,000.62) [Thirteen Thousand Seven Hundred Sixty-Three Dollars and Sixty Cents ($13,763.60) damages sustained by libelant and Two Thousand Two Hundred Thirty-Seven Dollars and Two Cents ($2,-237.02) damages sustained by respond-ent] and having further found that the negligence of the MANDY contributed to the extent of three-quarters (¾) of the total fault, and that the negligence of the MA NEE contributed to the extent of one-quarter (¼) of the total fault, the Court now computes the actual damage amount to be allocated to the fault of the MANDY to be Twelve Thousand Dollars and Forty-Seven Cents ($12,000.47) and the actual damage amount to be allocated to the fault of the MA NEE to be Four Thousand Dollars and Fifteen Cents ($4,000.15).

With these actual damage amounts allocated to the respective parties, this Court, under the formula set forth by Judge Miner [10], awards damages against the respondent and in favor of libelant, in the sum of Nine Thousand Seven Hundred Sixty-Three Dollars and Forty-Five

always rests in the sound discretion of the court, under all the circumstances.'

\*      \*      \*      \*      \*

"The necessary conclusion is, that the question whether the libelant, upon the facts found, is entitled to a decree for divided damages, must be answered in the affirmative, in accordance with the judgment below. This being the only question certified, and the amount in dispute being insufficient to give this court jurisdiction of the whole case, our jurisdiction is limited to reviewing this question. Chicago Union Bank v. Kansas City Bank, 136 U.S. 223 [10 S.Ct. 1013, 34 L.Ed. 341]. Whether, in a case like this, the decree should be exactly one-half of the damages sustained, *or might, in the discretion of the court, be for a greater or less proportion of such damages, is a question not presented for our determination upon this record, and we express no opinion upon it.*" 137 U.S. 1, 12, 13 and 15, 11 S.Ct. 29, 32, 33, 34 L.Ed. 586.

9. "But for the American exception in collision cases, almost the entire maritime world divides damages proportionally in every sort of maritime case." Starling, Damages in Admiralty, (1957) 45 Cal. L.Rev. 304, 343.

10. "14. In cases where separate damages arising out of a single occurrence are sustained and claimed by opposing parties, and where the damages to be awarded must be computed by comparing respective degrees of fault of the opposing parties, the formula to be applied in the determination of the respective amounts actually to be paid, by set-off or otherwise, is as follows:

"(a) The percentage by which each party's wrongdoing contributed to the occurrence, is determined.

"(b) The damages of the respective parties are added together and a total damage sum determined.

"(c) The percentages determined in accordance with (a) are applied to the total damage figure determined pursuant to (b).

"(d) In the event that the actual damage amount allocated to the fault of a party exceeds the amount of damages determined by the court or jury to have been sustained by that same party, the excess over the said actual damages sustained by him, is the amount of damages to which the other party is entitled.

"(e) In the event that the actual damage amount allocated to the fault of a party is less than the amount of damages determined by the court or jury to have been sustained by that same party, the difference is the amount of damages to which that same party is entitled from the other party.

"(f) In the event that the actual damage amount allocated to the fault of a party is equal to the amount of damages determined by the court or jury to have been sustained by that same party, no damages shall be allowed to or from that party." N. M. Paterson & Sons, Limited v. City of Chicago, supra, 209 F. Supp. at page 582.

Cents ($9,763.45). The actual damage amount allocated to the fault of respondent being *more* than the amount of damages determined to have been sustained by the respondent, no damages shall be allowed respondent. Judgment shall be entered accordingly in favor of libelant and against respondent in the sum of Nine Thousand Seven Hundred Sixty-Three Dollars and Forty-Five Cents ($9,763.45). It is further ordered that libelant and respondent be and are hereby adjudged responsible for their own costs, and no costs shall be assessed in favor of either of said parties. Proctor for libelant is requested to submit appropriate findings and judgment consistent with this opinion.